533 A.2d 1055

**INDUSTRIAL VALLEY BANK AND TRUST COMPANY**

v.

**Harry HOWARD, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1987.

Filed Nov. 25, 1987.

Mark R. Semisch, Willow Grove, for appellant.

Peter M. McGonigle, Philadelphia, for appellee.

Before CIRILLO, President Judge, and McEWEN and TAMILIA, JJ.

TAMILIA, Judge:

Appellant, Harry Howard, appeals from a February 19, 1987 Order of the Court of Common Pleas of Montgomery County which sustained the preliminary objections of the appellee, Industrial Valley Bank and Trust Co. (IVB), and dismissed appellant's counterclaim with prejudice.

The facts and procedural history of this appeal are as follows. Appellant entered a leasing arrangement with YBH Porshe Audi in August of 1984 for lease of an Audi for a five-year lease term, with total monthly payments in the amount of $37,779, and with an option to purchase the Audi at the end of the term for $13,075.

On April 30, 1986, IVB filed a complaint against appellant, alleging the lease had been assigned to it in return for $48,715.60 consideration. It alleged appellant had not adhered to the agreed obligations because he had returned the car prior to the completion of the lease term, and this placed him in default. At the same time, appellee asserted it had complied with the terms and conditions of the lease. Appellee further claimed $19,911.81 was due and owing to it, it credited appellant with $4,158.49 for payments on the account, $15,690 for sale of the car, $10,248.73 for unearned interest, and added a $237.60 late charge and $1,054.83 interest from August 12, 1985. Additionally, appellee claimed it was entitled to reasonable attorney fees of twenty per cent or $3,932, together with costs of collection, repossession, storage, sale and other charges. Appellee demanded judgment in the amount of $23,893.81 plus the cost of the suit and interest. On June 17, 1986, appellant filed an answer, new matter and counterclaim. In the answer, he denied he was in default of the lease and alleged,

> On the contrary, the car was defective and under the 'lemon law' Defendant requested that Plaintiff, as the owner, obtain a new car. Plaintiff advised Defendant it would do nothing, that the fact that the car was 'unrepairable' was 'his problem' and all they wanted was

money.   Defendant rejudicated [sic] the lease by reason of Plaintiff's breach of duty and contract.

Answer and new matter of appellant, 6/17/86, p. 1.

Appellant further responded IVB had deliberately and consciously breached the agreement by refusing to exercise its rights under the Automobile Lemon Law (73 P.S. § 1951 *et seq.*), by refusing to provide appellant with a vehicle fit for the purpose for which leased, by refusing to sell the car at its fair market value, by refusing to answer phone calls and letters, and otherwise attempting to coerce appellant by threats to ruin his credit.   Appellant also denied the damages sought by IVB, arguing the car, which was valued at $35,000, was "given away" by IVB for $15,690 despite its ability to sell the car at fair market value.   Had IVB sold the car at its fair market value, it would have recovered all sums it believed were due it and, moreover, any loss suffered by IVB was self-imposed by reason of its failure to exercise rights under the Lemon Law.

Appellant's new matter and counterclaim read as follows:

## NEW MATTER

8.   On February 18, 1985, the Audi automobile, the subject of the lease, was returned to the dealer for repairs.   Shortly thereafter it was returned a second time and on April 1st it was returned a third time.   [O]n or about April 1st, 1985, Defendant was advised by an employee of the dealer that the car was not repairable.   On April 12, 1985, the vehicle was not repaired.   On April 12, 1985 the Defendant, by his attorney, confirmed the aforesaid in writing with Plaintiff and requested that it take action under the lemon law.   Counsel had already orally requested the same.

9.   On April 24, 1985, counsel for Defendant wrote to Plaintiff a second time since the prior letter was not responded to.   On that date counsel advised that he assumed Plaintiff was pursuing its rights since only the owner could exercise the privileges of the lemon law.

10. In or about the end of May or early June of 1985, counsel was called by an employee of Plaintiff. Said employee advised counsel that since the first two letters were not certified the bank might deny receiving the same, although said employee admitted to such receipt. The employee, whose name is unknown, then threatened Defendant with a law suit and a bad credit rating.

11. On June 12, 1985, that conversation was confirmed in writing by counsel in a letter to the Plaintiff and counsel advised again of Plaintiff's responsibility to utilize the lemon law.

12. On or about June 17, 1985 Plaintiff responded in writing for the first time and did not deny the contents of counsel's prior letters.

13. The prior history was set forth in writing by letter from counsel to Plaintiff on June 20, 1986. No reply was received.

14. Sometime thereafter Plaintiff gave the car away for $15,000. when it in fact had a market value of $30,000.

15. No attempt to utilize the lemon law was made by Plaintiff. On September 24, 1985, Counsel requested of Plaintiff information regarding what steps Plaintiff took, or why letters were not answered, and again Plaintiff did not reply.

16. Plaintiff's actions in failing to utilize the lemon law, in failing to sell the vehicle for its fair market value are breaches of its duty and obligations under the lease and law.

17. Defendant rejudicated [sic] the lease by letter dated April 12, 1985, and no response to said letter was made.

18. Plaintiff's employee expressed a willingness to lie, threatened Defendant with adverse credit ratings, and otherwise demonstrated complete disregard for Defendant and his rights.

19. There is no breach of contract.

20. Plaintiff suffered no loss and if it did it was self-imposed.

## COUNTERCLAIM

21. The allegations of Defendant in paragraphs 1–20 are incorporated herein by reference.

22. Defendant was without the use of a vehicle for three weeks as a result of the defect in the leased auto.

23. Defendant's credit rating has been adversely affected by Plaintiff improperly, deliberately, for the sole purpose of threatening Defendant, placing an adverse notice on Defendant's credit.

24. As a result Defendant was required to expend sums for the use of a car and has been denied credit under circumstances where such was necessary, all adversely affecting Defendant financially.

WHEREFORE, Defendant asks judgment against Plaintiff in a sum in excess of $20,000.00 together with costs and counsel fees.

Appellee, on August 25, 1986, filed preliminary objections to appellant's counterclaim, alleging:

. . . . .

2. Paragraph 16(a) and 16(b) of the Lease Agreement, attached as Exhibit "A" to Defendant's Complaint, provides as follows:

16(a) The Vehicle is subject to the manufacturer's standard new car warranty. We assign to you all of our rights under that warranty.

16(b) YOU HAVE ORDERED THE VEHICLE WHICH WE ARE LEASING TO YOU. WE MAKE NO REPRESENTATIONS, PROMISES, STATEMENTS OR WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE MERCHANTABILITY, SUITABILITY OR FITNESS OF THE VEHICLE FOR A PARTICULAR PURPOSE, OR OTHERWISE. WE SHALL NOT BE LIABLE TO YOU FOR ANY DAMAGE, LOSS OR EXPENSE WHICH YOU MAY SUFFER AS THE RESULT OF ANY INADEQUACY OR DEFECT OF THE VEHICLE.

3. Paragraph 30 of the Lease Agreement (Exhibit "A") provides as follows:

30. GENERAL PROVISIONS: The lease shall be binding upon and benefit the heirs, personal representatives, successors and assigns of the parties, except as otherwise provided. The Lease expresses the entire agreement between you and us. If any provision of the Lease shall be declared illegal or contrary to law, that provision shall be disregarded and the Lease shall continue in full force as though that provision had never been included in this Lease.

4. Defendant has failed to plead the existence of any writing signed by IVB which would allow Defendant to disregard the provisions of paragraph 16(a) and 16(b) of the Lease Agreement.

5. Defendant, therefore, has no cause of action against IVB for any damages resulting from the alleged defect on the vehicle or to act on its rights under the Pennsylvania Automobile Lemon Law since such rights were expressly waived and/or assigned to Defendant.

WHEREFORE, Plaintiff demands that Defendant's Counterclaim be dismissed for failure to state a cause of action.

### Demurrer—Count II

6. The second portion of Defendant's Counterclaim sounds in defamation and, at paragraph 23, alleges:

23. Defendant's credit rating has been adversely affected by Plaintiff improperly, deliberately, for the sole purpose of threatening Defendant, placing an adverse notice on Defendant's credit.

7. Nowhere in Defendant's Complaint does Defendant allege the defamatory words or content of the alleged defamatory statements or credit rating, the person or persons who made them or to whom the alleged statements were made.

8. Defendant's Complaint fails to allege with the requisite specificity a cause of action for defamation.

WHEREFORE, IVB demands that Defendant's Counterclaim be dismissed for failure to state a cause of action.

Appellee's preliminary objections also contained a motion to strike the counterclaim for failure to conform to the legal requirements for the statement of a cause of action for defamation, and a motion for a more specific pleading, to allege with specificity the allegedly defamatory words attributable to IVB and the facts and circumstances surrounding them. These preliminary objections were sustained by a February 19, 1987 Order, and the appellant's counterclaim was dismissed with prejudice. Appellant filed this timely appeal on February 27, 1987.

On appeal, appellant-lessee argues the preliminary objections of the appellee were improperly sustained and he contends the court erred in its determination that the assignment of warranties clause of the lease agreement includes an assignment of rights under the Lemon Law, and that the disclaimer clause of the lease agreement includes rights under the Lemon Law. He further urges the responsibility of bringing a Lemon Law action rests on the lessor, as the lessor is the purchaser of the car.

After a thorough review of the record and of applicable law, this Court finds appellant's counterclaim does not state a cause of action for IVB's failure to bring a Lemon Law action.

In *Aetna Electroplating Co., Inc. v. Jenkins,* 335 Pa.Super. 283, 484 A.2d 134 (1984), we said:

A preliminary objection in the nature of a demurrer 'admits all relevant facts sufficiently pleaded in the complaint, and all inferences fairly deducible therefrom, but not conclusions of law or unjustified inferences.' *DeSantis v. Swigart,* 296 Pa.Super. 283, 286, 442 A.2d 770, 772 (1982). Preliminary objections can properly be sustained and a complaint dismissed only in cases that are clear and free from doubt. Any doubt must be resolved against the moving party. Only where it appears with certainty that, upon the facts averred, the law will not permit

recovery can the complaint be dismissed and summary judgment entered for the defendant.

*Id.*, 335 Pa.Superior Ct. at 285, 484 A.2d at 135 (citations omitted).

In the case before us, it "appears with certainty" the law will not permit recovery by the appellant from appellee for appellee's failure to institute a Lemon Law action.

The Lemon Law, 73 P.S. § 1951 *et seq.*, provides:

### § 1954. Repair obligations

(a) **Repairs required.**—The manufacturer of a new motor vehicle sold and registered in the Commonwealth shall repair or correct, at no cost to the purchaser, a nonconformity which substantially impairs the use, value or safety of said motor vehicle which may occur within a period of one year following the actual delivery of the vehicle to the purchaser, within the first 12,000 miles of use or during the term of the warranty, whichever may first occur.

The right to bring an action rests with purchasers:

### § 1958. Civil cause of action

Any purchaser of a new motor vehicle who suffers any loss due to nonconformity of such vehicle as a result of the manufacturer's failure to comply with this act may bring a civil action in a court of common pleas and, in addition to other relief, shall be entitled to recover reasonable attorneys' fees and all court costs.

The Act, at § 1952, defines purchaser as: "Purchaser. A person, or his successors or assigns, who has obtained ownership of a new motor vehicle by transfer or purchase or who has entered into an agreement or contract for the purchase of a new motor vehicle which is used or bought for use primarily for personal, family or household purposes."

The Pennsylvania Lemon Law does not speak to lessees, nor is there any appellate level case law determining whether a lessee or lessor of a motor vehicle is the purchaser for purposes of the Lemon Law. Our research nationally of all

states which have enacted lemons laws, provides scant assistance.[1] To begin with, virtually all of the statutes speak of "consumer" rather than "purchaser". Tennessee, however, gives a "consumer" a lemon-type action. Tenn. Code Ann. § 55–24–201 *et seq.* (1987). The Tennessee Code, at § 55–24–201, defines consumer as "the purchaser (other than for purposes of resale) or the lessee of a motor vehicle." The Code, at § 55–24–204, specifically provides a refund scheme for leased vehicles whereby the lessee receives the lease price less the aggregate deposit and rental payments previously paid to the lessor for the leased vehicle. The Lemon Law of the state of Missouri also places lemon action rights with the consumer of a new motor vehicle. Mo.Ann.Stat. § 407.560 *et seq.* (Vernon 1985). Missouri defines the term "new motor vehicle" to include demonstrators or lease-purchase vehicles as long as a manufacturer's warranty was issued as a condition of sale. *See also* Va.Code § 59.1–207.9 *et seq.*, (1984) which resembles the Missouri treatment, *supra.* Florida's act, at Fla.Stat. Ann. § 681.101 *et seq.* (West 1984), likewise defines "consumer" to include the lessee of a motor vehicle primarily used for personal, family or household purposes.

New York state, in 1986, amended its act to include lessees in the definition of consumer. That Code now reads:

" 'Consumer' means the purchaser, other than for purposes of resale, or the lessee of a motor vehicle normally used for personal, family or household purposes and subject to a manufacturer's express warranty ... "

N.Y.Gen.Bus.Law § 198–a (Consol.1987). *See also id.* at 1986 Amendments.

A recent New York Supreme Court case addressed the question of whether the 1986 amendment should be given retroactive application. In that case, a lessee who entered into a lease agreement in 1984 for the lease of a 1984

---

**1.** The appendix in *Brooks v. Ford Motor Co., et al.,* 36 Cumberland L.J. 760, 763 lists 32 jurisdictions which have "lemon laws" and the terminology used for purchaser, consumer or buyer.

Maserati brought action against Maserati Automobile, Inc. and others alleging, among other things, that Maserati had breached G.B.L. Section 198–a, the "Lemon Law". The Court noted:

> The New York Lemon Law was amended, effective August 2, 1986, inter alia, to expand the definition of "consumer" to apply to lessess [sic] of automobiles (See 1986 Regular Session Laws, ch. 799). Generally, such substantive amendments are prospective in application, unless the language either expressly or impliedly [sic] requires a retroactive application. See, Statutes Section 51(b). Plaintiff submits no supporting evidence to demonstrate retroactive intent of the legislature. Plaintiff's cited case, *Laiosa v. Camelot AMC (Jeep, Ltd.)*, 113 AD2d 145 [495 N.Y.S.2d 285] (3d Dept.1985), to support retroactive application is distinguishable. In *Laiosa* the warranty expired in early April 1985, over one (1) year prior to the enactment of the 1986 amendment. Therefore, GBL Section 198–a cannot apply to the March 31, 1984 lease agreement between Regency and Becker; accordingly, the Fifth Clause of Action is dismissed against all defendants, including Maserati.

*Stuart Becker & Co. v. Steven Kessler Motor Cars, Inc.,* 135 Misc.2d 1069, 1073, 1074, 517 N.Y.S.2d 692, 695 (1987).

It appears legislative action is necessary to establish whether lessees or lessors of new motor vehicles have a right to proceed under the Lemon Law and to determine who bears the responsibility of making a claim. Since this Court may only interpret the law as it stands, we find the statute does not provide that the lessor has a right or the responsibility for bringing such a claim, thus appellee IVB committed no breach of any duty as is argued by the appellant in his counterclaim. Appellee would have this Court find the Pennsylvania Lemon Law is an extension of the manufacturer's warranty, which under the lease is assigned to appellant and, therefore, the Lemon Law is to be pursued by the lessee/appellant, while appellant alleges the lessor/appellee is the owner of the car and it has the

duty to proceed. Neither is correct. Neither lessee nor lessor in a lease situation qualifies as a purchaser within the clear meaning of the language in 73 P.S. § 1952. While the lessor retains legal possession, it is not a purchaser for use primarily for personal or household purposes. While the lessee may be using the vehicle for those purposes, he is not a purchaser.[2] The lease contains so many provisions which divide the rights and responsibilities of a purchaser between the lessee and lessor that the application of the Lemon Law is not possible. In the event of "fleet" leases, the problem becomes even more complex.

The preliminary objections of the appellee were, therefore, properly sustained, as the appellant could not have stated a cause of action against IVB on this allegation. If transfer of the warranty triggered the Lemon Law, then appellant was the person qualified to exercise its provisions. If only a purchaser could qualify as having a right to proceed under the Lemon Law, neither appellant nor IVB meet the statutory definition of purchaser.[3] Nor did appel-

**2.** In *Brooks v. Ford Motor Co., et al., supra,* passing on the applicability of the Lemon Law to a lease of an automobile with option to purchase, the Cumberland County court found the lessee to be covered by the Lemon Law as a "purchaser" within the meaning of the Uniform Commerical Code, the Magnason–Moss Warranty Act and the Pennsylvania Unfair Trade Practices and Consumer Protection Law. The rationale hinges on the transfer and interpretation of the new car warranty, similar to the rationale employed in *Henderson v. Benson–Hartman Motors, Inc.,* 33 Pa.D. & C.3d 6 (Allegheny, 1983), wherein it was held that warranties apply to leases as well as to purchases. The Lemon Law is not derivative of or subject to the new car warranty but is a unique and specific piece of legislation that is independent of the warranty.

**3.** This case, while resolvable without determining the meaning of the term "purchaser" and whether it incorporates a lease with option to purchase, calls out for legislative action to resolve any possible ambiguity in that term, similar to legislation in our sister states of Tennessee, Missouri, Florida and New York, which includes lessee in the term "consumer". We are constrained to go further than the plain language of the statute. In *Molineux v. Reed,* 516 Pa. 403 n. 4, 532 A.2d 792 n. 4 (1987), the Supreme Court, speaking of a discovery rule construed by this Court, held: "We do not think Appellee's attorneys were entitled to rely on Superior Court's creation of such a grace period, directly contrary to the precise wording of the statute, unless

lant's pleadings show he had made out a cause of action in defamation for IVB's alleged intentional destruction of appellant's credit rating. To the contrary, any erosion of appellant's credit was caused by his breach of the lease agreement.

Order affirmed.

and until this Court gave its approval." We are, therefore, reluctant to extend the term "purchaser" in the context of this case.