680 A.2d 907

**Susan MIKULA, Appellant,**

v.

**FORD MOTOR COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued April 18, 1996.

Filed July 30, 1996.

John P. Vetica, Jr., Pittsburgh, for appellant.

Anthony J. Williott, Pittsburgh, for appellee.

Before HUDOCK, FORD ELLIOTT and BROSKY, JJ.

HUDOCK, Judge:

The issue presented in this case of first impression is whether a new motor vehicle which was purchased out-of-state by a Pennsylvania resident who registers the car and pays insurance under Pennsylvania Law is subject to the provisions of Pennsylvania's Automobile Lemon Law (Lemon Law), 73 P.S. section 1951, *et seq.* Because we find that the vehicle at issue is not covered under the Lemon Law, we affirm the grant of summary judgment in favor of Ford Motor Company (Ford).

The pertinent facts and procedural history may be summarized as follows: On or about April 2, 1994, Susan Mikula (Mikula), a Pennsylvania resident, purchased a 1994 Ford Escort from a Ford dealership located in Bethesda, Maryland. Although the car was purchased in Maryland, Mikula registered and insured the car in Pennsylvania. Mikula alleges that, within approximately six months after its purchase, she began to experience difficulties with the operation of the car. Thereafter, the car was serviced numerous times at a Pittsburgh Ford dealer. Because the problems allegedly were not corrected, and she continued to experience them, Mikula filed a lawsuit pursuant to the Lemon Law. After filing an answer, Ford moved for summary judgment, claiming that the Lemon Law does not apply to vehicles purchased outside Pennsylva-

nia.[1] The trial court agreed and granted Ford's motion. On appeal to this Court, Mikula contends that the court below erred as a matter of law in granting summary judgment because the pertinent language of the Lemon Law is ambiguous and susceptible to more than one meaning. We disagree.

When determining whether a trial court properly granted summary judgment, this Court's scope of review is plenary. *Schriver v. Mazziotti*, 432 Pa.Super. 276, 278–80, 638 A.2d 224, 225 (1994), *alloc. den.*, 539 Pa. 638, 650 A.2d 52. Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact. Pa.R.C.P. 1035(b), 42 Pa.C.S.A. We must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party when determining if there is a genuine issue of material fact. *Schriver*, 638 A.2d at 225. We will only reverse the trial court's decision when it commits an error of law or abuses its discretion. *Accu–Weather, Inc. v. Prospect Communications, Inc. and CRB*, 435 Pa.Super. 93, 98–99, 644 A.2d 1251, 1254 (1994). An abuse of discretion occurs "when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action taken is a result of partiality, prejudice, bias or ill will." *Coker v. S.M. Flickinger Co., Inc.*, 533 Pa. 441, 447, 625 A.2d 1181, 1185 (1993) (*quoting* P.L.E. New Trial § 2). Put differently, summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Accu–Weather, Inc.*, 644 A.2d at 1254.

The Lemon Law creates a civil cause of action for "any purchaser of a new motor vehicle who suffers any loss due to a nonconformity of such vehicle as a result of the manufacturer's

---

1. Prior to the motion for summary judgment the matter was submitted to arbitration which resulted in an award to Mikula. Ford appealed to the trial court from the arbitrators' award and then filed for summary judgment.

failure to comply" with its provisions. 73 P.S. § 1958. The Lemon Law defines purchaser as follows:

> **"Purchaser."** A person, or his successor or assigns, who has obtained ownership of a new motor vehicle by transfer or purchase or who has entered into an agreement or contract for the purchase of a new motor vehicle which is used or bought for use primarily for personal, family or household purposes.

73 P.S. § 1952. The Lemon Law defines "new motor vehicle" as follows:

> **"New motor vehicle."** Any new and unused self-propelled, motorized conveyance driven upon public roads, streets or highways which is designed to transport not more than 15 persons, *which was purchased and is registered in the Commonwealth* and is used or bought for use primarily for personal, family or household purposes, including a vehicle used by a manufacturer or dealer as a demonstrator or dealer car prior to its sale. The term does not include motorcycles, motor homes or off-road vehicles.

*Id.* (Emphasis added).

Because the Lemon Law protects only purchasers of new motor vehicles, any person seeking recourse under it must establish that the vehicle purchased falls within the definition of "new motor vehicle." As in the proceedings below, Ford contends that Mikula does not fall within the above definition because she purchased the car outside Pennsylvania. According to Ford, to meet the Lemon Law's definition, three requirements must be met: 1) the vehicle was purchased in Pennsylvania; 2) the vehicle is registered in the Commonwealth; and 3) the vehicle is used or bought for use primarily for personal, family or household purposes. Mikula, on the other hand, contends that the three requirements should be construed as follows: 1) the vehicle is purchased; 2) the vehicle is registered in the Commonwealth; and 3) the vehicle is used or bought for use primarily for personal, family or household purposes. Even though section 1952 defines a new motor vehicle as one "purchased and registered in Pennsylvania," Mikula contends that the Lemon Law should be con-

strued broadly by focusing on its remedial and consumer protection purposes.

Because the Lemon Law was enacted to protect Pennsylvania consumers who purchase new cars which fail to operate properly after numerous attempts at repair, *and* because the consumer can sue only the manufacturer and not the local dealer, Mikula contends that there is no reason the Legislature would penalize a Pennsylvania consumer who crossed state lines to obtain a more competitively-priced vehicle. Thus, according to Mikula, it should make no difference where the Pennsylvania resident purchased the vehicle. Ford responds to this argument by noting that the language at issue is unambiguous and the several Pennsylvania appellate decisions which have considered the Lemon Law or construed terms therein have done so in a narrow fashion. *See e.g., Reeves v. Morelli–Hoskins Ford, Inc.*, 415 Pa.Super. 431, 434–36, 609 A.2d 828, 830 (1992) (person whose car is repossessed after filing a Lemon Law action loses status of "purchaser"); *Ford Motor Credit Co. v. Dunsmore*, 374 Pa.Super. 303, 305–07, 542 A.2d 1033, 1035 (1988) ("Lemon Law does not permit the purchaser of a defective automobile to discontinue making payments under a financing contract while pursuing available Lemon Law remedies"); *Industrial Valley Bank & Trust Co. v. Howard*, 368 Pa.Super. 263, 271–73, 533 A.2d 1055, 1059 (1987), *alloc. den.*, 520 Pa. 576, 549 A.2d 136 (1988) (neither lessee or lessor in a lease situation qualifies as a "purchaser" within the clear meaning of section 1952 of the Lemon Law).

 Like the court below, we understand that the language of the Lemon Law may leave Mikula without a remedy because Maryland law only provides protection for cars registered in that state. *See* Md.Com.Law II Code Ann. sections 14–1501(c) and 14–1502. However, we cannot do violence to the clear language of the Lemon Law in pursuit of its purpose. *See Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 5–7, 568 A.2d 931, 934 (1990) (when language of statute is clear and explicit, consideration of arguments based upon an alleged contrary intent or legislative history is improper); *Eck v. School District of City of Williamsport*, 197 Pa.Super. 591,

594–96, 180 A.2d 79, 81 (1962) (rules of statutory construction are to be resorted to only where there is a patent or latent ambiguity; rules of construction are not to be used to create doubt). After a review of the Lemon Law's provisions, as well as principles of statutory construction, we find persuasive and therefore adopt the following discussion by the Honorable R. Stanton Wettick, Jr., in his 1925(a) opinion, in disposing of the present appeal:

I ... agree with Ford that the language of the Lemon Law ... clearly and unambiguously supports its position.

\* \* \* \* \* \*

First, the phrase "in the Commonwealth" applies to the purchase and to the registration [of the vehicle] because if the Legislature had intended for the phrase "in the Commonwealth" to apply only to registration, the relevant portion of the definition of "new motor vehicle" would have read as follows:

... which was purchased, is registered in the Commonwealth and is used or bought for use primarily for personal, family or household purposes.

The Legislature would not have used the word "and" between the first requirement ("which was purchased") and the second requirement ("is registered in the Commonwealth"), and also between the second requirement ("is registered in the Commonwealth") and the third requirement ("is used or bought for use primarily for personal, family or household purposes").

\* \* \* \* \* \*

Second, in construing a statute, a court shall presume that the Legislature would not include language that is surplusage. In construing a statute, it is presumed that every word is intended for some purpose and must be given effect.

Under Ford's construction of "new motor vehicle," the words "which was purchased" have a purpose; they are part of a clause imposing a requirement that the purchase and registration occur in the Commonwealth. Under [Mikula's]

construction of "new motor vehicle," the words "which was purchased" are surplusage; other provisions in the Lemon Law provide remedies only to a "purchaser" which is a defined term that includes persons who obtain ownership of a new motor vehicle by purchase.

Third, a civil cause of action under the Lemon Law does not arise until the manufacturer has failed to repair or correct a nonconformity pursuant to repair obligations set forth at 73 P.S. § 1954(a) which reads as follows:

§ 1954. Repair obligations

(a) Repairs required.—*The manufacturer of a new motor vehicle sold and registered in the Commonwealth* shall repair or correct, at no cost to the purchaser, a nonconformity which substantially impairs the use, value or safety of said motor vehicle ... (Emphasis added).

The Legislature would not have included the term "sold" unless its purpose was to restrict repair obligations to vehicles that were both sold and registered in the Commonwealth. An argument that the term "sold" was included to make it clear that the repair obligation extended only to vehicles that were sold ignores the following defined terms that are used in this subsection: "manufacturer;" "new motor vehicle;" and "purchaser." This is a carefully written piece of legislation that would not have introduced an undefined term within the provision that triggers the cause of action set forth in 73 P.S. § 1958.

Trial Court Opinion, 10/22/95, at pp. 2, 4–7 (citations omitted).

Both parties present persuasive policy arguments as to why the Legislature would or would not intend to exclude cars purchased by Pennsylvania residents in another state. Any consideration of the purposes behind the Lemon Law, however, cannot change the clear and unambiguous wording of its provisions. Whether the wording of the definition of "new motor vehicle" under the Lemon Law was specifically chosen to monitor and/or promote only the sales of new vehicles in Pennsylvania or whether the factual scenario at issue in the present case was not contemplated by the Legislature when

enacting the statute is speculation; any change in language must come from that body and not the courts.

Order affirmed.