Evan SINGER, Plaintiff,

v.

LAND ROVER NORTH AMERICA, INCORPORATED, Defendant.

Civil Action No. 96–1947.

United States District Court, D. New Jersey.

March 18, 1997.

Delia A. Clark, Kimmel & Silverman, P.C., Haddonfield, N.J., for Plaintiff.

William J. Tinsley, Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, P.A., Newark, N.J., for Defendant.

OPINION

ORLOFSKY, District Judge:

Plaintiff filed this action against Land Rover North America, Inc. ("Land Rover"), alleging, *inter alia*, a violation of New Jersey's Consumer Protection Law ("Lemon Law").[1] N.J. Stat. Ann. §§ 56:12–29 to 12–49. Land Rover has moved for partial summary judgment pursuant to Fed.R.Civ.P. 56(b) on plaintiff's Lemon Law claim. Land Rover maintains that, as a former lessee, who no longer has possession of the automobile in question, plaintiff cannot avail himself of the remedies provided by the Lemon Law.

Defendant's motion raises an issue of first impression and requires this court to construe New Jersey's Lemon Law in a factual context unanticipated by its drafters. Because I conclude that the intent of the statute is to protect lessees, even if the lease term has expired, defendant's motion for partial summary judgment will be denied.[2]

## I.   Facts and Procedural History

On July 23, 1993, plaintiff signed a lease for a new, 1993 Range Rover sport utility vehicle. The lessor was Chase Manhattan Bank. The term of the lease was thirty-six (36) months, and the lease allowed 15,000 miles per year, or 45,000 miles over the entire term.

Plaintiff periodically brought the Range Rover to the dealer, complaining of poor handling and stalling. Plaintiff contends that these conditions were not repaired. On April 26, 1996, approximately thirty-three (33) months into the lease, plaintiff filed this action.

Sometime at the end of July, 1996, plaintiff returned the vehicle to the lessor. In early August, 1996, plaintiff's counsel informed defendant that plaintiff had returned the vehicle to the lessor. According to plaintiff's counsel, the vehicle was inspected by a representative of Land Rover on September 5, 1996, and subsequently sold at auction. Certif. of Delia A. Clark, Esq. ¶¶ 9–10.

On January 21, 1997, this matter was referred to arbitration pursuant to Rule 47D of the General Rules of the United States District Court for the District of New Jersey. An arbitration hearing in this matter is currently scheduled for March 24, 1997.

## II.   Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [he] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Hersh v. Allen Products Co.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). The district court must grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996). In deciding whether there is a disputed issue of material fact, the Court must draw all inferences from the underlying facts in favor of the non-moving party. *See Hancock Indus. v. Schaeffer,* 811 F.2d 225, 231 (3d Cir.1987) (citation omitted); *Pollock v. American Telephone & Telegraph Long Lines,* 794 F.2d 860, 864 (3d Cir.1986).

---

**1.** The complaint also alleges violations of the Magnuson–Moss Warranty Act, Pub.L. 93–637, 88 Stat. 2183 (codified as amended in scattered sections of 15 U.S.C.), breach of warranty under the Uniform Commercial Code, and consumer fraud.

**2.** If New Jersey permitted federal courts to certify questions of state law to its Supreme Court, this question of statutory interpretation, apparently one of first impression, might be appropriate for certification. *See Hakimoglu v. Trump Taj Mahal Assoc.,* 70 F.3d 291, 293 (3d Cir.1995); *see id.* part V, at 302–04 (Becker, J., dissenting, joined, in part V only, by Nygaard and Alito, JJ.) (describing the overwhelming satisfaction of federal judges with state certification procedures where they exist and urging New Jersey to adopt certification). *See also Hulmes v. Honda Motor Co.,* 924 F.Supp. 673, 678 (D.N.J.1996). Alas, New Jersey has yet to adopt a certification procedure.

In order to defeat a motion for summary judgment, "a factual issue must be both material and genuine." *Kowalski v. L & F Prods.*, 82 F.3d 1283, 1288 (3d Cir.1996). A material factual issue is "one that might 'affect the outcome of the suit under governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

For the purposes of this motion, the parties are in substantial agreement on the facts outlined above. This motion presents a pure question of statutory interpretation and, accordingly, is ripe for summary adjudication. *See Nation Wide, Inc. v. Scullin*, 256 F.Supp. 929, 932 (D.N.J.1966), *aff'd*, 377 F.2d 554 (3d Cir.1967).

## III. Discussion

Under New Jersey's Lemon Law, N.J. Stat. Ann. §§ 56:12–29 to 12–49, manufacturers of new vehicles must repair all defects which substantially impair the vehicle's use, value, or safety if reported by the purchaser (or lessee) within the first 18,000 miles of operation or within two years of delivery, whichever occurs first. For the purposes of this motion only, it will be assumed that the plaintiff can demonstrate that the Range Rover failed to perform as warranted.

A successful claimant under the Lemon Law statute, who has purchased a new vehicle, is generally reimbursed the full purchase price of the car, less an allowance for reasonable use, plus the filing fees and other costs associated with bringing the action. N.J. Stat. Ann. § 56:12–32(a). The successful claimant must return the defective vehicle to the manufacturer. *Id.* Defendant argues therefore, that New Jersey's Lemon Law provides only a "forced rescission" remedy to consumers, a remedy which should be unavailable to consumers who are unable to return the vehicle to the manufacturer.

Defendant notes that there are no New Jersey cases addressing the status of a lessee who brings an action under the Lemon Law and subsequently returns the vehicle to the lessor, before it is determined whether the vehicle is nonconforming. However, defendant cites several Pennsylvania cases which it argues are analogous. The protection afforded by the Pennsylvania "Lemon Law," however, by its very terms, does not extend to a lessee of a motor vehicle. *See Industrial Valley Bank & Trust Co. v. Howard*, 368 Pa.Super. 263, 533 A.2d 1055, 1059 (1987) (neither lessee nor lessor qualifies as a "purchaser" within the meaning of Pennsylvania's Lemon Law).

By contrast, New Jersey's Lemon Law specifically covers lease agreements. The statute provides, in pertinent part, that:

A consumer [3] who leases a new motor vehicle shall have the same remedies against a manufacturer under this section as a consumer who purchases a new motor vehicle. If it is determined that the lessee [4] is entitled to a refund pursuant to subsection a. of this section, the consumer shall return the leased vehicle to the lessor [5] or manufacturer and the consumer's lease agreement with the motor vehicle lessor shall be terminated and no penalty for early termination shall be assessed. The manufacturer shall provide the consumer with a full refund of the amount actually paid by the consumer under the lease agreement, including any additional charges as set forth in subsection (a) of this section if actually paid by the consumer, less a reasonable allowance for vehicle use. The manufacturer shall provide the motor vehicle lessor with a full refund of the vehicle's original purchase price plus any unrecovered interest expense, less the amount actually paid by the consumer under the agreement. Refunds shall be made to the lessor and lienholder, if any, as their interests appear on the records of

---

**3.** A consumer is defined as "a buyer or lessee, other than for purposes of resale or sublease, of a motor vehicle; a person to whom a motor vehicle is transferred during the duration of a warranty applicable to the motor vehicle; or any other person entitled by the terms of the warranty to enforce the obligations of the warranty." N.J. Stat. Ann. § 56:12–30.

**4.** A lessee is "a person who leases a motor vehicle pursuant to a lease agreement." *Id.*

**5.** A lessor is "a person who holds title to a motor vehicle leased to a lessee under a lease agreement or who holds the lessor's rights under such an agreement." *Id.*

ownership maintained by the Director of the Division of Motor Vehicles.

N.J. Stat. Ann. § 56:12–32(b) (West Supp. 1996).

None of the three Eastern District of Pennsylvania cases cited by Defendant directly addresses leased vehicles. *Berry v. General Motors Corp.*, Civ. A. No. 87–3237, 1989 WL 86224 (E.D.Pa. July 28, 1989), involved a plaintiff whose car was repossessed by the lienholder. In *Simons v. Mercedes–Benz of N.A., Inc.*, Civ. A. No. 95–2705, 1996 WL 103796 (E.D.Pa. March 7, 1996), the plaintiff sought to maintain a Lemon Law action after having "traded in" the vehicle in question. Similarly, in *Sinnerard v. Ford Motor Co.*, Civ. A. No. 95–2708, 1996 WL 544226 (E.D.Pa. Sept. 23, 1996), following the theft of the vehicle, the plaintiff accepted payment from its insurer. In each case, the court ruled that the Pennsylvania Lemon Law only protected "purchasers," by which the law meant those who retained possession or title to the motor vehicle.

More importantly, each Pennsylvania case cited by Land Rover addresses a distinct concern, none of which is presented to this court by this motion. In *Berry*, the court sought to prevent a unilateral suspension of loan payments by the borrower. *See also Ford Motor Credit Co. v. Dunsmore*, 374 Pa.Super. 303, 542 A.2d 1033 (1988). In *Simons* and *Sinnerard*, the plaintiffs would have had a double recovery, unless the court had ordered them to disgorge the insurance payment or trade-in value to the manufacturer in return for a refund of the purchase price of the vehicle.[6] The Pennsylvania Lemon Law does not specifically authorize such a remedy, and the district court may simply have been unwilling to create it. *See Simons*, 1996 WL 103796 at *2; *Reeves v. Morelli–Hoskins Ford, Inc.*, 415 Pa.Super. 431, 609 A.2d 828, 830 (1992) (legislature, not the courts, must expand the statutory definition of a "purchaser" to include those who no longer own or possess the vehicle in question). *But cf., Harmon v. Concord Volks-*

*wagen, Inc.*, 598 A.2d 696, 702–03 (Del.Super.Ct.1991) (distinguishing *Berry* on similar facts, in part because the Delaware Lemon Law's definition of "consumer" is more inclusive than Pennsylvania's definition of a "purchaser").

Defendant points out that the New Jersey Lemon Law merely grants lessees the "same remedies" as buyers. N.J. Stat. Ann. § 56:12–32(b). *See also* Assembly Appropriations Comm. Statement, S. No. 2201, L.1988, ch. 123. The remedial scheme includes the consumer's return of the vehicle, either to the lessor or manufacturer. *See* § 56:12–32(b). Clearly, the New Jersey statute anticipates that the consumer will have possession of the vehicle at the time that it is adjudged a "lemon."

The New Jersey Lemon Law also provides that the lessor shall return the "lemon" to the manufacturer and be made whole. *See* § 56:12–32(b). The transaction between lessor and manufacturer, however, is a mere prerequisite to the further requirement of Section 56:12–35 of the Lemon Law, mandating that the manufacturer include a warning that the vehicle was returned as a "lemon," in the event the vehicle is to be resold or released. Therefore, although the plain language of the statute reflects the legislature's assumption that the vehicle would be returned to the manufacturer as part of the overall remedial scheme, it cannot be said that the Lemon Law is intended to protect lessors. Indeed, lessors are specifically excluded from the statutory definition of "consumers." *See* N.J. Stat. Ann. § 56:12–30.

Land Rover places great importance upon the twin requirements that the lessor be made whole by the manufacturer and that any future buyer be warned that the vehicle has been returned to the manufacturer as a "lemon." In this case, Land Rover clearly cannot comply with those statutory elements because the vehicle has already been returned to the lessor and resold. Plaintiff argues that he should not lose his statutory remedy simply because he failed to extend

---

6. The district court in *Simons* also pointed out that, by trading-in the vehicle, the plaintiff deprived the manufacturer of an opportunity to inspect the vehicle after suit was filed. In this case, Land Rover was given the opportunity to inspect the vehicle before its resale at auction. *See* Certif. of Delia A. Clark ¶ 9.

the lease, or otherwise retain the allegedly nonconforming vehicle. In a moment of rhetorical overstatement, plaintiff derides such an interpretation of the Lemon Law as unfairly "requir[ing] a consumer to retain possession of a two (2) ton juggernaut, capable of mass destruction at any moment, simply to protect his financial claims." Plaintiff's Brief at 2.

■ Unadorned by hyperbole, the question for this court is whether the statutory requirement contained in New Jersey's Lemon Law that a prevailing consumer receive a refund is severable from the requirement that the manufacturer accept the return of the vehicle, so that a consumer may seek a remedy under the Lemon Law, even if the vehicle cannot be returned to the manufacturer. In construing Pennsylvania's Lemon Law, Pennsylvania's intermediate appellate court and the district court in the Eastern District of Pennsylvania, have answered this question "No."

In reaching this conclusion, those courts have reasoned that the definition of a "Purchaser", under Pennsylvania's Lemon Law is limited to those having possession of the vehicle in question. This rationale may be questioned, at least insofar as the courts proclaim an unwillingness to expand upon legislative definitions, while simultaneously adding a purely judicial gloss, the requirement of "continued possession," to the legislature's original handiwork. *See Reeves,* 609 A.2d at 831 (McEwen, J., dissenting). Nevertheless, Pennsylvania courts clearly have construed a much narrower statute than the New Jersey Lemon Law, which, by its express terms, protects a broad class of "consumers," including lessees.

More important than the rationale supporting the Pennsylvania decisions, however, is the fact that all of them address anomalous situations which deprived an erstwhile "purchaser" of title or continued possession of the vehicle. For example, for a plaintiff in a Pennsylvania Lemon Law action, the lesson to be learned from *Simons* is not to "trade-in" his or her vehicle during the pendency of

the suit. Similarly, *Berry* merely requires a plaintiff whose car is subject to a lien to continue to make payments on the vehicle. These decisions do not erect significant barriers before the very class of persons protected by the Pennsylvania Lemon Law.[7] To apply the reasoning of the Pennsylvania cases to New Jersey's Lemon Law would work a much greater hardship upon New Jersey "consumers."

■ The purpose of New Jersey's Lemon Law is to provide "procedures to expeditiously resolve disputes between a consumer and a manufacturer," without requiring the consumer to prove fraud. *See* N.J. Stat. Ann § 56:12–29. Clearly, the Lemon Law is a remedial statute. As such, courts should construe the Lemon Law liberally to achieve its remedial purpose. *Abbamont v. Piscataway Twp. Bd. of Educ.,* 138 N.J. 405, 431, 650 A.2d 958 (1994). Furthermore, courts "should avoid a literal interpretation of individual statutory terms or provisions that would be inconsistent with the overall purpose of the statute." *Young v. Schering Corp.,* 141 N.J. 16, 25, 660 A.2d 1153 (1995).

The New Jersey Lemon Law specifically affords relief to lessees. The statutory period in which a consumer must seek repairs is two years or 18,000 miles. N.J. Stat. Ann. § 56:12–31. It must be assumed that a three-year, or even a four-year, lease could easily expire before the final adjudication of a Lemon Law suit. To require the lessee, in all such circumstances, to seek to extend the lease term, or to purchase the vehicle, if that is allowed under the lease, would create an insurmountable hurdle for a potentially large class of plaintiffs who seek the protection of New Jersey's Lemon Law.

Furthermore, although many "consumers" will no doubt discover nonconformities in their vehicles early in the lease term, any construction of New Jersey's Lemon Law which absolutely bars recovery when the plaintiff no longer possesses the leased vehicle, would serve to encourage manufacturers, or their authorized dealers, to promise to

---

**7.** Admittedly, *Sinnerard* is a more difficult case inasmuch as it seems to require a plaintiff in a Pennsylvania Lemon Law action to retain a vehicle which has been "totaled." Nevertheless, the factual scenario which unfolded in *Sinnerard* cannot be commonplace.

repair or correct any nonconformity simply in order to delay potential legal action until the lease is about to expire.[8] It is the Lemon Law's stated aim to "expeditiously resolve disputes." The statute must be construed so as to promote cooperative resolution of disputes, not in a manner that would encourage delay. For all of these reasons, defendant's motion for partial summary judgment will be denied.

Because I have concluded that the statutory requirement that a vehicle which has been determined to be a "lemon" must be returned by the lessor to the manufacturer is not an indispensable part of the scheme of New Jersey's Lemon Law, an appropriate remedy can be fashioned to meet the facts of this case. If plaintiff ultimately prevails in this action, Land Rover will not be required to "provide the motor vehicle lessor with a full refund of the vehicle's original purchase price...." N.J. Stat. Ann. § 56:12–32(b). Nor can this court oblige Land Rover to conform to the notice requirements of section 56:12–35.

It must be stressed that this court's conclusion in no way reflects on the merits of plaintiff's claim as to the alleged non-conformities of the Range Rover. As was noted, the plaintiff had amassed over 45,000 miles on the vehicle by the conclusion of the lease term, and owed the lessor an additional payment for excess mileage. In light of the accumulated mileage, one might understandably be dismayed by plaintiff's claim that the alleged non-conformities rendered "control of the vehicle extremely difficult and driving quite dangerous." Plaintiff's Brief at 1. Whatever the merits of Singer's claim, however, they cannot defeat the broad remedial purpose and public policy reflected in New Jersey's Lemon Law.

## IV. Conclusion

For the reasons set forth above, the court will deny the motion of defendant, Land Rover North America, Inc., for partial summary judgment. The court will enter an appropriate order.

8. In this case, the facts presently before the court do not suggest that either Land Rover, or its

### ORDER

This matter having come before the Court on the motion of defendant, Land Rover North America, Inc., for partial summary judgment pursuant to Fed.R.Civ.P. 56(b), Delia A. Clark, Esq., of Kimmel & Silverman, P.C., appearing on behalf of the Plaintiff, and William J. Tinsley, Esq., of Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, P.A., appearing on behalf of the Defendant; and,

The Court having considered the motion, the briefs and exhibits filed in support of and in opposition to the motion, for the reasons set forth in this Court's OPINION filed concurrently with this ORDER;

It is on this 18th day of March, 1997,

ORDERED that the motion of defendant, Land Rover North America, Inc., for partial summary judgment is DENIED.

dealer, has purposely delayed the resolution of plaintiff's claims.