**VIRGINIA HEART INSTITUTE, LTD., a Virginia Corporation, Plaintiff,**

**v.**

**NORTHWEST PENNSYLVANIA BANK & TRUST COMPANY, a Pennsylvania Corporation, Elizabeth Breene Gilger, an Individual, and Sally Breene Huxley, an Individual, Executors of the Estate of George A. Breene, Deceased, Defendants.**

**Civ. A. No. 77–122 Erie.**

United States District Court,
W. D. Pennsylvania.

April 4, 1978.

---

Ray C. Stoner and Michael R. Borasky, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for plaintiff.

John M. McLaughlin, James T. Marnen, Knox, Graham, McLaughlin, Gornall & Sennett, Inc., Erie, Pa., for defendants.

## OPINION

WEBER, Chief Judge.

The parties are Plaintiff, as Lessee of an expensive piece of diagnostic medical equipment, and Defendants, as Lessors. The equipment was destroyed in a fire. Plaintiff demands that Defendants replace the equipment and Defendants have declared the lease terminated. Count I of the Complaint is based on a contractual cause of action. Count II asserts a cause of action in negligence for the failure of Defendants to secure the proper insurance protection on the equipment.

### I.

■ The Plaintiff's complaint is a lengthy narrative statement of the business and family relationships between the parties. The briefs of the parties deal extensively with such extrinsic matters. In the disposition of the motions before us they are irrelevant. If the contract between the parties can be construed within its four corners, the Court must determine the matter without the consideration of extrinsic evidence.[1]

■ Lessee argues that the rules of contract interpretation require that an ambiguity in a lease must be construed strictly against the party who drafted the unclear agreement and in favor of the other party. This argument loses its effect, regardless of our finding of an ambiguity, when we consider the statement set forth fifteen pages later in Lessee's brief that Lessor was initially a direct participant in the business of the Lessee, in terms of both financial investment and control. There was no adversary element. It was a sweetheart deal. The recital of facts revealed that the original Lessor, Breene, arranged for the conversion of Lessee into a business corporation to enable himself and his wife to participate in the ownership and control of the corporation. Breene became the Vice President and a Director of the Lessee corporation, his wife was also a Director, and together they owned fifty percent of the capital stock of Lessee. They were the uncle and aunt of the Director of Lessee Institute. The cited rule of construction has no logical application to such a situation.

We have cross-motions for judgment on the pleadings. Both parties agree that the controversy between them centers on the interpretation of a paragraph in an Equipment Lease Agreement which was in effect between the parties at the time that the equipment was destroyed by fire.

■ The motions are designated as motions for judgment on the pleadings because the complaint pleads the terms of the agreement and both parties rely on its terms in support of their motion. The Court concludes that judgment on the pleadings is proper if the intention of the parties can be clearly determined from the four corners of the instrument. If there is any ambiguity in the instrument, then we will have to have recourse to extrinsic evidence to determine the intention of the parties.

The instrument provides for a lease of the equipment for a term of 90 months at a rental of $216,000 payable in equal consecutive monthly installments of $2,400.

Before we proceed with an analysis of the contract language, it is important to consider what the parties were attempting to do. It appears that they were attempting to provide insurance protection against the

---

1. I always thought that this was the law but after reading the voluminous briefs in the matter I had to go back to basic texts. As the King of Siam said to Anna, the older I get the less I am sure of that which once I knew was so. 8 Penna. Law Encycl. *Contracts* § 172 says in black letter print: " . . . extrinsic evidence is not admissible to explain a writing in the absence of an ambiguity." (p. 227), and cites: *Waldman v. Shoemaker* 367 Pa. 587, 80 A.2d 776 [1951], and *McCormack v. Jermyn*, 351 Pa. 161, 40 A.2d 477 [1945].

risks of loss to both parties from damage or destruction of the leased property, and allocating the responsibility for this between themselves.

The foreseeable risks of loss to the Lessor because of damage or destruction would be

a) the loss of its capital investment;
b) the loss of rental income under the lease;
c) liability for personal injury or property damage arising out of the ownership or use of the property.

The foreseeable risks of loss to the Lessee are:

a) the loss of the value of its leasehold interest in the equipment;
b) the loss of profits from the continued operation of the equipment;
c) liability for personal injury and property damage arising out of possession or use of the property.

The critical part of the Equipment Lease Agreement is Clause VII.

INSURANCE—Lessor shall purchase, provide and maintain in force during the term of this agreement policy or policies of insurance insuring the LEASED EQUIPMENT for the full insurable value thereof against all risk of damage, physical loss or damage to the LEASED EQUIPMENT, except for coverage customarily excluded in so called "all risk" policies. Except for coverage so supplied by Lessor, Lessee shall assume and bear the risk of loss of any damage to the LEASED EQUIPMENT and Lessee further covenants and agrees to hold Lessor and any Assignee or Financing Source harmless from any loss, damage, theft or destruction of the LEASED EQUIPMENT, (except as may be covered by Lessor's insurance), and Lessee at his expense agrees to repair any such unit of LEASED EQUIPMENT which can be restored for its intended use and there shall be no abatement of monthly rentals during the period of restoration and repair.

In the event any loss or damage covered by insurance provided and maintained by Lessor shall render any unit of the LEASED EQUIPMENT unsuited for use,

Lessor may, after thirty days' written notice by Lessee, elect (i) to replace or repair or (ii) forthwith terminate this agreement with the respect to the unit or units of LEASED EQUIPMENT destroyed or damaged.

Lessee will purchase, provide and maintain in force policies adequately insuring the public with coverage of bodily injury, medical payments and property damage in amounts which shall be satisfactory to the Lessor. Each such insurance policy shall be written for the benefit of the Lessor, and any security interests designated. Each such policy shall provide for the giving to the Lessor at least ten (10) days' prior written notice of the proposed modification, alteration and cancellation of any such insurance policy.

Lessee agrees to pay and to protect, indemnify, save harmless and defend Lessor and any Assignee of Lessor hereunder from and against any and all liability, damages, expenses (including without limitation, attorney's fees and expenses) causes of action, suits, claims, demands or judgments of any nature whatsoever arising from injury to persons or property growing out of or connected with ownership, operation, maintenance or use of the LEASED EQUIPMENT or resulting from the condition thereof while said LEASED EQUIPMENT is subject to the terms of this agreement. The foregoing covenants of indemnity shall continue in force and effect notwithstanding the termination of this agreement and the Lessee shall provide for Lessor evidence of contractual liability insurance in amounts satisfactory to Lessor covering the indemnification agreement of Lessee hereunder.

A provision of Clause VI is also pertinent:

MAINTENANCE, IMPROVEMENTS, WARRANTIES—. . . . Lessor shall not be required to make any repairs or replacements of any nature or description, or to make expenditures of any kind in conjunction with the maintenance of LEASED EQUIPMENT under this

agreement. Lessor shall have no obligation to Lessee with respect to LEASED EQUIPMENT except as expressly provided by this agreement and none shall be inferred.

It is our conclusion that the instrument as a whole contains a clear and logical expression of the intention of the parties, free from inconsistency.

The first sentence of Clause VII requires the Lessor to purchase insurance for the equipment for the full insurable value thereof under "all risks" coverage, which would include destruction by fire.

This sentence does not say for whose benefit the insurance is to be provided, and each party argues that it is implied that the benefit accrues to it. Each party has an insurable interest in the equipment. There is no justification for the addition of any implied condition because we believe that the remainder of the paragraph clearly indicates the "all risk" insurance must be for the benefit of the owner or Lessor.

Lessor is the owner of the equipment. The capital investment here is Lessor's. It is that which might be destroyed by fire. It is destruction by fire which Lessor agreed to insure against for the full insurable value of the equipment. Risk of such loss was expressly excluded from the obligations which the Lessee assumed. Lessee would have no interest to insure to the extent of the full insurable value because the only loss Lessee could suffer is limited to its remaining leasehold interest in the equipment and the profits it might derive therefrom. Lessee would not be entitled to the "full insurable value" of the machine unless it agreed with Lessor to bear this loss. This it did not do.

The second sentence states that except for the "all risk" insurance coverage provided for, Lessee shall assume and bear the risk of loss and damage and to hold Lessor harmless from any loss or destruction, exception as covered by Lessor's insurance.

So far it is clear, Lessor must insure against destruction by fire. If the equipment is destroyed the Lessor gets the insurance proceeds to protect its capital investment. Lessee has no claim to the proceeds of this insurance. Lessee has no insurable interest in such loss. In express terms the lease relieves Lessee of any risk of loss that can be covered by Lessor's insurance coverage, which includes the loss of destruction by fire. Likewise, Lessee has no claim against Lessor for the loss of the value of its leasehold interest because it agreed to bear the risk of this loss and save Lessor harmless from any claim for the loss. The only loss that Lessee suffers is the value of continued use of the leased machine over and above the rental, which is a separately insurable event against which the Lessee may protect himself.

The second paragraph confirms this interpretation of the intention of the parties. It provides that if the machine is destroyed by any event covered by the Lessor's insurance, the Lessee, by notice, may put the Lessor on election; the Lessor may elect to replace the machine or terminate the lease and end Lessee's obligation to pay rent. The Lessee could benefit from either replacement or the termination of his obligation to pay rent. If the termination of a favorable lease results in damage to the Lessee because the rental of replacement equipment would be higher, this is a risk of loss that Lessee expressly assumed, again an insurable event against which Lessee could have protected itself. The Lessor suffers no loss from the fire; he either recovers his capital investment, or he continues to enjoy the fruits of his bargain by replacing the equipment.

We cannot accept the Lessee's argument that the equipment was to be insured for the Lessee's benefit. The agreement does not say so. It is not necessarily implied from the language of the agreement. Such a construction is not compelled by logic. It is contrary to the reality of the situation of the parties. The only interest that Lessee can have in the equipment is in the economic value of the leasehold interest and the profits derived therefrom. These are not matters which the Lessor is required to insure against. The Lessor was only re-

quired to insure its capital investment. The Lessee's possible loss is variable. The appearance of new types of equipment on the market at a lower rental value might make the lease an economic burden rather than a benefit, and the development of new diagnostic techniques could render the continued use of the equipment unprofitable. The parties knew how to provide for insurance for the benefit of a particular party. The third paragraph of Paragraph VII requires the Lessee to procure liability insurance for the benefit of Lessor.

The intention of the parties is further illuminated by the fact that the only insurable interest in the value of the leased equipment was in the Lessor. The risk of its destruction by fire was expressly assumed by the Lessor and expressly excluded from the risks to be borne by Lessee. The Lessee had no obligation to restore or replace equipment destroyed by fire. The absolute right of Lessor to terminate the lease upon destruction by fire further limits any insurable interest that the Lessee might have. Under these circumstances the Lessee would have no right to the proceeds of an insurance policy on the full insurable value of the equipment.

It is argued that "it would be almost impossible to imagine any reason for the Lessor to have obligated itself to perform a contractual duty by the performance of which it alone would benefit." Counsel might try these for size. Lessee was specifically relieved of any obligation for the loss of the equipment by fire. This risk of loss was specifically placed on Lessor. Lessee did not have to return the equipment in good condition at the end of the lease in the event of destruction by fire. If Lessor wanted to continue an advantageous business relationship after destruction by fire, it was obliged to replace the equipment. The equipment was expensive. Without insurance the Lessor might not have been able to exercise its option. There is a balancing of the benefits between Lessor and Lessee in all these clauses.

Lessee also complains of Lessor's action in terminating the lease. Lessor on December 29, 1975, ten days after the destruction of the equipment, notified Lessee of its determination to terminate the lease. Apparently, Lessee had not yet given Lessor the notice which triggered Lessor's obligation to make this election.

First we inquire whether this action or the termination clause itself has any effect on the liability for loss or the nature of the obligation to insure. We find that it is consistent with the obligations allocated to the parties by the other parts of Paragraph VII, and should be read together with them to ascertain the intention of the parties from the four corners of the instrument, the landmarks within which the Court has attempted to confine itself in the analysis of this agreement. The consistent pattern is that Lessor was to insure against loss by fire, Lessee was relieved of any risk of loss by fire, but bore the risk of business interruption by reason of the loss of the equipment, that upon loss the Lessor had the option of supplying a new piece of equipment to Lessor, out of its insurance proceeds, or terminating the agreement and relieving Lessee from further obligation to pay rent.

However, we face an entirely different problem when we consider Lessee's charge that the lease was unlawfully terminated. Both parties pay deference to the legal principle that conditions precedent to a termination must be strictly fulfilled. We do not find it relevant to consider whether or not Lessor had insurance policies as described in Paragraph VII actually in force at the time of the fire or not. It was Lessor's obligation to insure and the same consequences will follow whether coverage was in effect or not. With or without insurance the Lessor had the absolute right to terminate.

The agreement does not describe what kind of notice is to be given Lessor by Lessee, or within which time. There are no options in the Lessee to make a "reasoned decision about how best to proceed in light of that loss." That option is specifically reserved to Lessor. The only purpose of the notice is to require the Lessor to make

up its mind within thirty (30) days of being notified by Lessee.

An early decision in this regard would be advantageous to Lessee. Lessee's obligation to pay rent is not extinguished by the fire, but only by the exercise of the absolute right to terminate vested in the Lessor.

It is provided in Paragraph VI of the Agreement that

"Lessor shall have no obligation to Lessee with respect to LEASED EQUIPMENT except as expressly provided by this agreement and none shall be inferred."

The early termination is thus of benefit to Lessee only. Without it the obligation to pay rent continues.

Lessee argues that this clause can only be read as one contemplating that at the time of such loss it is for the Lessee initially to make the decision whether it wants to continue in business or whether it simply desires to take its share of the insurance proceeds as compensation for its loss. The difficulty with this argument is that it flies directly in the face of the terms of the agreement that place such option in the Lessor. Lessee is relieved of any risk of loss by destruction which is insurable. Lessee does not have to return the equipment in good condition at the end of the lease if the equipment is destroyed by fire. There is no provision for sharing the insurance proceeds because the various risks are specifically apportioned by the terms of the lease.

■ However, the Lessee cites the provisions for notice by it to Lessor as a condition precedent to termination. No such notice was given. Lessor, however, gave a notice of termination ten days after the fire. While it has been alleged that Lessor failed to procure the required insurance, its omission to do so did not shift either the insurable risks that were apportioned between the parties or any benefits that would flow therefrom. It is the Lessor who bears any loss from the failure to secure insurance because the Lessee was relieved of this risk. Lessor loses its capital investment and, if it is otherwise unable to re-place the equipment, the option to continue an advantageous leasing arrangement. If it does not replace the equipment, the function of the notice clause is demonstrated, the Lessor must terminate the lease and Lessee's obligation to pay rent.

Lessor enjoys no windfall by the destruction of the equipment. It recovers its capital investment only. If it desires to continue receiving rent it must replace the equipment. If it does not it receives no more rent, and loses whatever benefit it had in the continuance of the lease, the rent reserved, the continued depreciation deduction, and the other income tax advantages that have been mentioned in the briefs as a motive for the transaction.

■ Lessee suffers no unintended forfeiture of its rights. Its only right on destruction is to give notice to Lessor to replace the equipment or terminate the obligation to pay rent. The Lessor very promptly exercised this option without waiting for the notice, thus extinguishing Lessee's obligation to pay rent at the earliest time, a benefit to the Lessee.

Thus the intended function of the notice clause has been served.

While the Lessee is relieved of the obligation to pay rent it may have suffered the loss of an advantageous business arrangement measured by the value of its bargain less the rental cost. Many factors could turn this into a burden rather than a benefit. Nevertheless, this is a risk specifically assumed by Lessee in the agreement.

II.

■ Lessee also sues on a cause of action for negligence because of Lessor's failure to secure or maintain the proper insurance. Because we have found no right in the Lessee to the proceeds of such insurance, this cause of action must also fail.