644 A.2d 1251

**ACCU–WEATHER, INC., Appellant,**

v.

**PROSPECT COMMUNICATIONS, INC., and
CRB of Westchester, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued April 5, 1994.

Filed July 14, 1994.

94

John G. Milakovic, Harrisburg, for appellant.

John R. Miller, Jr., Bellefonte, for appellees.

Before ROWLEY, President Judge, and KELLY and POPOVICH, JJ.

KELLY, Judge.

In this appeal, appellant, Accu–Weather, Inc. (Accu–Weather), asks us to determine whether the Centre County Court of Common Pleas properly ordered summary judgment in favor of appellee, CRB of Westchester, Inc. (CRB). We hold that because CRB's notice of termination does not strictly comply with the notice provisions of the agreement, it does not constitute legal notice. Further, a genuine issue of material fact exists as to whether Accu–Weather had adequate actual notice of termination of the agreement. Accordingly, we reverse the order of summary judgment in favor of CRB and remand for further proceedings.

The relevant facts and procedural history are as follows. On August 22, 1986, Accu–Weather entered into a written agreement with Prospect Communications, Inc. (Prospect),[1] under which Accu–Weather agreed to provide weather information service for Prospect in connection with the radio station WFAS. The duration of the service was clearly set forth in the agreement, which provided:

> 27. This Agreement shall remain in full force and effect for a period of two (2) years beginning on the 16th day of August, 1986, and it shall renew and continue in full force and effect for subsequent periods of two years each unless written notice of termination is received by one party from the other party at least one-hundred-twenty (120) days prior to the initial expiration date hereof or of any subsequent expiration date. Time is of the essence in this paragraph.

(Accu–Weather Exclusive Radio Service Agreement, 8/22/86 at 5.)

On February 20, 1990, Accu–Weather acknowledged and agreed to the assignment of all contractual rights and duties from Prospect to CRB. On March 7, 1990, Accu–Weather and CRB signed a written addendum to the June, 1986 agreement which extended the agreement to August 15, 1992, and provided that subsequent renewals would occur pursuant to provision 27 of the original June, 1986 agreement. However, by

---

1. Prospect was dissolved January 14, 1987.

letter dated February 20, 1991, CRB attempted to terminate the agreement as follows:

> This is to serve you notice to cancel our contract with you, effective 90 days from February 1, 1991 (our 1st conversation).

> Due to the reorganization of the station and market condition, we are forced to take this step, but at a later date, we may continue your services.

(CRB's Letter of 2/20/91.) Accu–Weather rejected CRB's notice of termination and responded on February 25, 1991, stating in part:

> ... We are not in a position based on your telephone conversation or on your letter to honor a cancellation effective 90 days from February 1, 1991. Such a cancellation on or about May 1st is not in accord with contract terms and does not relate to any contract date for ending of service. The contract currently runs through August 15, 1992 and *proper notification would be required to end it at that time* ....

(Accu–Weather's Letter of 2/25/91) (emphasis added).

CRB did not cease performance under the 1986 agreement on May 1, 1991 but continued to perform within the terms of the agreement. However, on June 1, 1992, CRB notified Accu–Weather of its intent to terminate at the next expiration date of the agreement, August 16, 1992. The notice referenced the letter of February 20, 1991 and purported to confirm the earlier attempted notice of termination given at that time. On June 18, 1992, Accu–Weather indicated that it would not accept CRB's June 1, 1992 notice of termination because it did not comply with the requirement that notice be given one hundred and twenty days prior to the expiration of the agreement. Additionally, Accu–Weather stated that the alleged notice of February 20, 1991 was ineffective and could not terminate the agreement at its August 16, 1992 expiration date.

CRB ceased performance on the contract as of August 16, 1992. In response, Accu–Weather filed a complaint against

CRB alleging breach of contract. Accu–Weather argued that effective notice of termination had not been give one hundred and twenty days prior to the expiration date of the agreement. Therefore, the agreement automatically renewed and continued until August 15, 1994.

CRB filed a motion for summary judgment on June 8, 1993. After review of the pleadings and affidavits, the trial court concluded that no genuine issue of material fact existed as to whether CRB had given Accu–Weather notice to terminate the agreement. Moreover, the trial court stated that, as a matter of law, the notice of termination was timely and proper. Therefore, the trial court entered the order for summary judgment on September 1, 1993, in favor of CRB. Accu–Weather's timely appeal followed.

Accu–Weather presents the following issues for our review:

1. WHETHER IN A BREACH OF CONTRACT ACTION SUMMARY JUDGMENT MAY BE GRANTED FOR THE DEFENDANT BASED UPON ITS NOTICE OF TERMINATION OF A CONTRACT, WHICH NOTICE DOES NOT COMPLY STRICTLY WITH THE CONTRACTUAL PROVISIONS FOR SUCH NOTICE AND IS VAGUE AND AMBIGUOUS?

2. WHETHER THE LOWER COURT SHOULD HAVE APPLIED NEW YORK LAW?

3. WHETHER SUMMARY JUDGMENT MAY BE GRANTED FOR THE DEFENDANT IN A BREACH OF CONTRACT ACTION BASED UPON A NOTICE OF CANCELLATION WHERE, IN RESPONSE TO THE PLAINTIFF'S OBJECTION TO THE NOTICE, THE DEFENDANT, BY ITS CONDUCT, WITHDRAWS THE NOTICE BY ACTING DIRECTLY CONTRARY THERETO FOR A YEAR AND A HALF, BY PERFORMING THE CONTRACT?

Accu–Weather's Brief at 2.

The scope of appellate review of a grant of summary judgment involves the following principles. First, the pleadings, depositions, answers to interrogatories, admissions on

file, together with any affidavits, must demonstrate that there exists no genuine issue of fact. Pa.R.C.P. 1035(b). Second, the moving party must be entitled to judgment as a matter of law. *Id.* The moving party has the burden of proving that no genuine issue of material fact exists. *Overly v. Kass,* 382 Pa.Super. 108, 111, 554 A.2d 970, 972 (1989). However, the non-moving party may not rest upon averments contained in its pleadings; the non-moving party must demonstrate that there is a genuine issue for trial. *Id.*[2] The court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. *Stidham v. Millvale Sportsmen's Club,* 421 Pa.Super. 548, 558, 618 A.2d 945, 950 (1992), *appeal denied,* 536 Pa. 630, 637 A.2d 290 (1993) (citing *Kerns v. Methodist Hosp.,* 393 Pa.Super. 533, 536–37, 574 A.2d 1068, 1069 (1990)). Finally, an entry of summary judgment is granted only in cases where the right is clear and free of doubt. *Ducko v. Chrysler Motors Corporation,* 433 Pa.Super. 47, 48, 639 A.2d 1204, 1205 (1993) (citing *Musser v. Vilsmeier Auction Co., Inc.,* 522 Pa. 367, 370, 562 A.2d 279, 280 (1989)). We reverse an entry of summary judgment when the trial court commits an error of law or abuses its discretion. *Kelly by Kelly v. Ickes,* 427 Pa.Super. 542, 547, 629 A.2d 1002, 1004 (1993) (citing *Carns v. Yingling,* 406 Pa.Super. 279, 594 A.2d 337 (1991)).

Accu–Weather first contends that summary judgment should not have been entered in favor of CRB based upon the February, 1991 notice of termination. Accu–Weather asserts that the notice was vague and ambiguous and did not comply strictly with the contractual provision.[3] Accu–Weather suggests that CRB's subsequent performance under the agreement negated the notice of termination. We agree.

**2.** Accu–Weather filed an affidavit pursuant to Pa.R.Civ.P. 1035(e) on August 3, 1993 alleging that a genuine issue of material fact exists as to whether CRB presented notice of termination.

**3.** We note that the notice of June 1, 1992 did not legally terminate the agreement under provision 27. The notice of that date was given only seventy-six days prior to the natural expiration date of the agreement, and, therefore, did not conform to the one hundred and twenty day requirement for termination.

■■■ In Pennsylvania, conditions precedent to a contract termination must be strictly fulfilled. *Wright v. Bristol Patent Leather Co.*, 257 Pa. 552, 556, 101 A. 844, 845 (1917); *Virginia Heart Institute Ltd. v. Northwest Pennsylvania Bank & Trust Co.*, 448 F.Supp. 215, 220 (W.D.Pa.1978). Additionally, notice to terminate a contract must be clear and unambiguous. *Eastern Milk Producers Co-op Ass'n, Inc. v. Lehigh Valley Co-op Farmers*, 568 F.Supp. 1205, 1207 (E.D.Pa.1983) (citing *Maloney v. Madrid Motor Corp.*, 385 Pa. 224, 228, 122 A.2d 694, 696 (1956)). "Ambiguous conduct and language intended to signal contract termination will be deemed not to have terminated the contract." *Id.*

■ The notice of February 20, 1991 did not comply with provision 27 of the agreement for several reasons. First, the provision explicitly stated that the agreement would not terminate prior to the expiration date which, at that time, was August 15, 1992. However, CRB attempted to terminate the agreement as of May 1, 1991, over a year before the term of the agreement was to expire, in contravention of provision 27. Upon receiving CRB's alleged notice of termination on February 20, 1991, Accu–Weather responded, in writing, unequivocally rejecting the notice and clearly setting forth the conditions under which the agreement could be terminated. CRB did not strictly comply with the conditions required to terminate the agreement.

■ Second, even if we were to consider the February 20, 1991 notice timely for purposes of terminating the agreement on the August 15, 1992 expiration date, the notice of termination would still fail as unclear and ambiguous.[4] The language of CRB's February 20, 1991 notice creates ambiguity. Although it refers to termination, the notice gives no indication that it will apply to the August, 1992 expiration date of

4. Accu–Weather also claims that the trial court erred by applying New York law's erroneous date rule. *See G.B. Kent & Sons, Ltd. v. Helena Rubinstein, Inc.*, 47 N.Y.2d 561, 393 N.E.2d 460, 419 N.Y.S.2d 465 (1979) (notice of termination may be valid notwithstanding the fact that the notice specifies the "wrong date" for termination). Even if Pennsylvania law recognized this rule, the notice of termination would still fail as unclear and ambiguous.

the agreement if not to an earlier date. On the contrary, the notice specifically states that the termination is to apply in "ninety days." Moreover, the notice continues, at some later date, Accu–Weather's services may be "continued." This statement fails to manifest a clear intent to terminate the agreement and constitutes ambiguity in the notice.

Third, ambiguity is also evident in CRB's continued performance after the notice of termination. When CRB attempted to terminate the agreement as of May 1, 1991, Accu–Weather rejected the notice and demanded strict compliance with the contract terms. Therefore, in reviewing the record in the light most favorable to the non-moving party, CRB's subsequent performance may be construed as an attempt to correct an anticipatory breach and as a withdrawal of the February 20, 1991 notice of termination. *See Kleiman, et ux. v. Cohen,* 98 Pa.Super. 61, 64 (1929) (notice of an intent to breach, if not accepted, may be withdrawn at any time before performance is due). At the very least, CRB's subsequent performance is conduct inconsistent with respect to a clear intent to terminate the contract. Hence, CRB's continued performance in conjunction with its February 20, 1991 notice of termination constituted a message that was both mixed and ambiguous. We hold, therefore, that under the relevant contract provision, Accu–Weather did not have legal notice of termination.

A conflict of testimony upon the controlling question in the case is a question of fact and one for the jury to determine. *Berwick Hotel Co. v. Vaughn,* 300 Pa. 389, 395, 150 A. 613, 616 (1930). An agreement prohibiting non-written modification may be modified by a subsequent oral agreement if the parties' conduct clearly shows an intent to waive the requirement that amendments be in writing. *Douglas v. Benson,* 294 Pa.Super. 119, 127, 439 A.2d 779, 783 (1982). Further, even though the time fixed in an agreement is stated to be "of the essence," it may be waived by the conduct of the parties. *Warner Co. v. MacMullen,* 381 Pa. 22, 29, 112 A.2d 74, 78 (1955).

 A central question in this case remains whether Accu–Weather had adequate actual notice of CRB's intent to terminate the agreement. The record reveals conflicting testimony on whether CRB gave Accu–Weather oral notice of termination subsequent to CRB's initial effort to terminate the agreement in February, 1991.[5] CRB asserts in the affidavit of its business manager that, through oral communications following the notice of February 20, 1991, CRB continuously evidenced an intention to terminate the agreement at its next expiration date, August 16, 1992.[6] However, in its affidavit submitted pursuant to Pa.R.Civ.P. 1035(e), Accu–Weather denies that any oral communications occurred in which CRB advised Accu–Weather of a continued desire to terminate the agreement at the next expiration date.[7] Therefore, a genuine issue of material fact exists, *i.e.* whether CRB evidenced a continued notice of intent to terminate the agreement follow-

5. Provision 24 of the contract provides that "no modifications to the agreement shall be made except by written addendum signed by both parties hereto." (Accu–Weather Exclusive Radio Service Agreement, 8/22/86 at 5). Whether subsequent oral communications modified the agreement and permitted CRB to terminate the contract is a question of fact. *See Douglas v. Benson, supra.*

6. The affidavit of CRB business manager, Bipin Shah, in support of the motion for summary judgment, states in part:
 ... Thus, during numerous telephone conversations with Accu–Weather employees throughout 1991 and the first half of 1992, I reminded Accu–Weather, when appropriate, that it was WFAS' intention that the Agreement terminate in August of 1992. Similarly, upon information and belief, Mr. Gary Starr, the station manager, also advised Accu–Weather on a number of occasions that WFAS would treat the Agreement as terminated as of August 1992....
 (CRB's Affidavit in Support of Summary Judgment, 6/3/93 at 3.)

7. The affidavit of John G. Milakovic, pursuant to Pa.R.Civ.P. 1035(e), states in part:
 ... In Defendant's ("CRB"), supporting papers to its motion for summary judgment, Mr. Bipin Shah swears to the alleged fact that he had a number of conversations with unnamed Accu–Weather employees, wherein he allegedly orally advised these unnamed persons that CRB desired to terminate its contract with Accu–Weather in August 1992.
 As noted in the affidavit of Barry L. Myers submitted in opposition to CRB's motion for summary judgment, Accu–Weather has no record of any such conversation ever occurring....
 (Accu–Weather's Affidavit Pursuant to Pa.R.Civ.P. 1035(e), 8/3/93 at 1.)

ing the rejected notification of February 20, 1991. Thus, the trial court erred in entering summary judgment in favor of CRB as that right is not clear and free of doubt. Accordingly, we reverse and remand for proceedings consistent with this opinion.

Order entering summary judgment reversed and remanded for further proceedings.