## Fortune v. Hamilton

C.P. of Monroe County, no. 1799 Civil 2005.

*David Heisler,* for plaintiffs.
*Paul Lees,* for defendants.

ZULICK, *J.,* January 17, 2007—This matter is before the court on a motion for summary judgment filed by defendants Pamela Hamilton and Muriel Berry, co-trustees of the Alfred Berry estate. Plaintiff Walter Fortune has brought suit for injuries he allegedly sustained while working on the property owned by the trustees. Fortune and his wife, Judy, own a cleaning business known as J.W. Building Maintenance Inc., doing business as Judy's Cleaning Services (JCS). Mr. Fortune has worked in the business since 1994. Walter Fortune deposition, pp. 27-33, 51.

Trustees owned a property at 36 Hallowood Acres in Price Township, Monroe County, Pennsylvania. Mrs. Berry resided there until she moved out of the property on July 14, 2003. Ms. Hamilton never lived there but visited from time to time. While a resident, Mrs. Berry allowed the property to fall into disrepair, including, inter alia, allowing her pets to defecate on her deck. On or about July 11, 2003, JCS and trustees entered into a contract for cleanup services on the property. The trustees specifically employed JCS to clean and inspect the property and notify the trustees of any needed repairs. See invoice no. 455411, dated July 11, 2003. The contract for the cleaning further specifies that the job was "considered hazardous with significant health risks." *Id.*

On July 20 and 21, 2003, Mr. Fortune power-washed the deck at the property as part of his contracted duties. Before he washed the deck, Mr. Fortune and Mrs. Hamilton had been on the deck on several occasions, discussing the work that needed to be done, including the removal of accumulated debris from the deck. *Id.* at 82-83. Mr. Fortune recommended replacing wood on the older section of the deck to make it match the newer section of the deck, making it aesthetically more presentable. *Id.* at 87-88. When Mr. Fortune power-washed the deck, the wood splintered. Mr. Fortune realized that it had a softer grain than he initially believed. *Id.* at 108. After he finished power-washing the deck, Mr. Fortune did not take any additional safety measures when walking on the deck. *Id.* at 106-107.

On July 22, 2003, Mr. Fortune assisted Mrs. Hamilton's minor son David with a task which led to both Mr. Fortune and David walking out on the deck. On his way back from assisting David, Mr. Fortune's left leg fell through the deck. *Id.* at 121-25. He alleges that the fall caused him to suffer injuries to his left foot, right arm, and right shoulder.

The Fortunes filed suit against the trustees on March 11, 2005, alleging negligence due to failure to maintain the deck and failure to warn Mr. Fortune of its hazardous condition. The Fortunes were deposed on October 20, 2005. On June 22, 2006, trustees filed an answer and new matter, denying liability and asserting the defenses of statute of limitations, statute of frauds, contributory negligence and/or assumption of risk, comparative negligence, and failure to state a cause of action. On June 22, 2006, the trustees filed a motion for summary judgment. Both parties filed briefs and appeared before the court

for oral argument on August 7, 2006. On September 15, 2006, the court gave the Fortunes leave to supplement the record by taking the deposition of Muriel Berry, co-trustee, within 60 days. On November 8, 2006, on petition, the Fortunes were given a 30-day extension of time to supplement the record. The Fortunes filed a supplemental brief on December 14, 2006, advising the court that they did not intend to supplement the record by taking Muriel Berry's deposition due to Ms. Berry's health problems.

## DISCUSSION

Summary judgment may be granted under Pa.R.C.P. 1035.2 where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Thompson Coal Company v. Pike Coal Company,* 488 Pa. 198, 202-204, 412 A.2d 466, 468-69 (1979). Summary judgment is properly entered where the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, demonstrate that no genuine, triable issue of fact exists and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b); *Cosmas v. Bloomingdales Bros. Inc.,* 442 Pa. Super. 476, 480, 660 A.2d 83, 85 (1995) (citation omitted); *Aetna Casualty and Surety Company v. Roe,* 437 Pa. Super. 414, 419-20, 650 A.2d 94, 97 (1994) (citations omitted); *Accu-Weather Inc. v. Prospect Communications Inc.,* 435 Pa. Super. 93, 98-99, 644 A.2d 1251, 1254 (1994) (citation omitted); *Stidham v. Millvale Sportsmen's Club,* 421 Pa. Super. 548, 558, 618 A.2d 945, 950 (1992), *allocatur denied,* 536 Pa. 630, 637 A.2d 290 (1993). (citation omitted)

Summary judgment may be granted only in cases where the right is clear and free from doubt. *Musser v.*

*Vilsmeier Auction Co. Inc.,* 522 Pa. 367, 370, 562 A.2d 279, 280 (1989). The court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. *Davis v. Pennzoil Co.,* 438 Pa. 194, 264 A.2d 597 (1970); *Aetna Casualty and Surety Company v. Roe, supra; Accu-Weather v. Prospect Communications, supra; Stidham v. Millvale Sportsmen's Club, supra.* Moreover, the burden is on the moving party to prove that no genuine issue of material fact exists. *Thompson, supra; Accu-Weather v. Prospect Communications, supra* (citing *Overly v. Kass,* 382 Pa. Super. 108, 111, 554 A.2d 970, 972 (1989)); *Long v. Yingling,* 700 A.2d 508, 512 (Pa. Super. 1997). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Thompson, supra.*

In response, the non-moving party may not rest upon the pleadings, but must set forth specific facts demonstrating a genuine issue for trial. *Phaff v. Gerner,* 451 Pa. 146, 303 A.2d 826 (1973). The court also must accept as true all well-pled facts contained in the non-moving party's pleadings. *Mattia v. Employers Mutual Companies,* 294 Pa. Super. 577, 440 A.2d 616 (1982); *Ritmanich v. Jonnel Enterprises Inc.,* 219 Pa. Super. 198, 280 A.2d 570 (1971).

The material facts summarized above are undisputed. The trustees seek summary judgment based upon their allegation that those facts cannot support recovery for the Fortunes as a matter of law. The key issues in this matter are what, if any, duty the trustees owed to Mr. Fortune, and if the trustees did owe a duty, whether their conduct placed them in breach of that duty. As described above, the trustees specifically contracted with JCS to

perform cleaning services and to notify the trustees of any repairs necessary to prepare the house for sale. Mr. Fortune was skilled in cleaning services and preparing houses for sale, although he did not perform skilled repair work, such as plumbing or electrical service. He contracted with others for those services when necessary. Consequently, an independent contractor standard is appropriate as a matter of law. See *Lieberger v. Walter Co.*, 74 D.&C.4th 270, 281 (Fayette Cty. 2005) ("Krumanacker Electric's status as an independent contractor changes, somewhat, the duty that Coolspring owes to the plaintiff").

As a rule, the duty owed by an owner of land to a visitor is dependent on that visitor's status. As regards to an independent contractor, like Mr. Fortune, "[a] landowner owes a duty to warn an unknowing independent contractor of existing dangerous conditions on the landowner's premises where such conditions are known or discoverable to the owner." *Colloi v. Philadelphia Electric Company*, 332 Pa. Super. 284, 291, 481 A.2d 616, 619 (1984). However, the Pennsylvania Supreme Court has recognized that a possessor of land is generally insulated from liability to an invitee if it is reasonable for the owner to believe that the dangerous condition would be obvious to and discovered by his invitee. *Howell v. Clyde*, 533 Pa. 151, 156, 620 A.2d 1107, 1109 (1993), citing *Palenscar v. Bobb Inc.*, 439 Pa. 101, 266 A.2d 478 (1970). Further, a possessor has no obligation to warn an independent contractor of dangers that would be at least as obvious to the contractor as to the owner. *Gutteridge v. A.P. Green Services Inc.*, 804 A.2d 643, 657 (Pa. Super. 2002), citing *Colloi*, 481 A.2d at 620. Indeed, as a general rule, when a possessor of land "turns the work over to an independent contractor with experience

and know-how, who selects his own equipment and employees, the possessor of land has no further liability in connection with the work to be done." *Brletich v. United States Steel Corporation,* 445 Pa. 525, 532, 285 A.2d 133, 136 (1971).[1] Pennsylvania courts have synthesized these principles to explain, "The question of whether a landowner owes duty to warn an independent contractor of dangerous conditions on the premises turns on whether the owner possesses 'superior knowledge' or information which places him in a better position to appreciate the risk posed to the contractor or his employees by the dangerous conditions." *Gutteridge,* 804 A.2d at 657-58, citing *Colloi,* 481 A.2d at 620.

In *Palenscar v. Bobb,* the plaintiff was hired to perform electrical repair at a building that was scheduled to be condemned. The electrical repairs were a stop-gap measure and the business owner had no intention of replacing the entire electrical system. Palenscar was aware of the danger of the electrical system, and the court concluded that the business owner was not liable for the burns Palenscar suffered as a result of performing this work. *Palenscar,* 439 Pa. 101, 266 A.2d 478. The court emphasized that Palenscar had been specifically hired to rem-

---

1. This differs from the general standard for invitees, which holds "A possessor of land is subject to liability for physical harm to his invitees by a condition on the land if, and only if, he

"(a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against danger." *Atkins v. Urban Redevelopment Authority of Pittsburgh,* 489 Pa. 344, 351, 414 A.2d 100, 103 (1980), quoting Restatement (Second) of Torts, §343.

edy electrical problems and, therefore, was aware of the dangerous condition. In such a situation, the owner "is under no duty to protect [contractors/invitees] against risks arising from or intimately connected with defects of the premises which the contractor has undertaken to repair." *Id.* at 106, 266 A.2d at 481.

Moreover, "Pennsylvania law imposes no general duty on property owners to prepare and maintain a safe building for the benefit of a contractor's employees who are working on that building. Rather, our law generally insulates property owners from liability for the negligence of independent contractors and places responsibility for the protection of the contractor's employees on the contractor and the employees themselves." *Chenot v. A.P. Green Services,* 895 A.2d 55, 63-64 (Pa. Super. 2006). This is because contractors are the instruments chosen by property owners to discover and repair dangerous conditions and protect others against them. See *Atkins, supra* at 353, 414 A.2d at 104-105.

A property owner is nonetheless liable to independent contractors and their employees for injuries suffered on the job if the injury is due to a "peculiar risk" or "special danger." *Chenot, supra,* citing *Philadelphia Electric Co. v. James Julian Inc.,* 425 Pa. 217, 228 A.2d 669 (1967). Liability due to peculiar risk is appropriate when (1) a risk is foreseeable to the employer of an independent contractor at the time the contract is executed (that is, if a reasonable person in the position of the employer would foresee the risk and recognize the need to take special measures); and (2) the risk is different from the usual and ordinary risk associated with the general type of work done. *Id.* This doctrine is to be construed narrowly. *Id.,* citing *Rudy v. A-Best Products Co.,* 870 A.2d 330,

335 (Pa. Super. 2005), *appeal denied*, 584 Pa. 714, 885 A.2d 533 (2005).

Here, the risk of injury due to the state of disrepair of the home is not different from the usual and ordinary risk associated with repairing a decrepit home. Moreover the trustees clearly did not foresee the risk; Ms. Hamilton permitted her son onto the deck just minutes earlier, which she would not have done if she had understood the deck as dangerous. Consequently, the peculiar risk exception is not appropriate in this case.

The trustees specifically hired Mr. Fortune to clean the property and advise the trustees of any repairs necessary to prepare the property for sale. At the time of Fortune's injury, neither of the trustees lived at the property. Mrs. Berry, the prior resident, had left the property and moved to a retirement community because she was unable to care for the home. Mr. Fortune said of Mrs. Berry, "I thought she was frankly in and out of a state of reality." Walter Fortune deposition, at 51. Mr. Fortune admits further that Pamela Hamilton had no knowledge regarding the condition of the deck that he himself did not have. *Id.* at 133. He also admits that he had stated the deck needed to be replaced for aesthetic reasons, *id.* at 87, and that some of the wood was starting to "shred and stuff," *id.* at 102, and should be replaced "for safety's sake," *id.* at 105. His observations, and Mrs. Berry's health problems, demonstrate that the property owners did not have superior knowledge under *Gutteridge, supra;* rather, Mr. Fortune was in a superior position to evaluate the risks of walking across the deck.

Mr. Fortune was specifically hired to identify and address the need for repairs that led to his injury, as in *Palenscar,* and had at least as much knowledge of the

dangers as trustees, since he was an expert in home repair and had correctly identified weaknesses in the deck. Considering the pleadings and the evidence, including plaintiff's deposition, there is no genuine issue of material fact. The agreed-upon facts lead to the conclusion that trustees did not breach any legal duty to Mr. Fortune. Therefore, they cannot be liable for Mr. Fortune's injury as a matter of law and the claim for negligence fails.

Finding no issue as to any material fact and recovery barred as a matter of law, I hold that defendants are entitled to summary judgment pursuant to Pennsylvania Rule of Civil Procedure 1035.2.

## ORDER

And now, January 17, 2007, it is ordered that defendants' motion for summary judgment is granted and judgment is entered in favor of defendants.