**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 15-1940

———————————

WILLIAM GIACONE

v.

VIRTUAL OFFICEWARE, LLC;
DAVID HAREL,

Appellants

———————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-13-cv-01558)
District Judge: Hon. Arthur J. Schwab

———————————

Argued January 20, 2016

BEFORE: FISHER, CHAGARES AND COWEN, <u>Circuit Judges</u>

(Opinion Filed:  March 1, 2016)

Richard L. Heppner, Jr., Esq.
Kim M. Watterson, Esq. (Argued)
Reed Smith
225 Fifth Avenue
Suite 1200
Pittsburgh, PA 15222

          Counsel for Appellants

Joseph R. Lawrence, Esq.
Jordan L. Strassburger, Esq. (Argued)
Strassburger, McKenna, Gutnick & Gefsky

444 Liberty Avenue
Suite 2200, Four Gateway Center
Pittsburgh, PA 15222

Counsel for Appellee

_____

OPINION[*]

_____

COWEN, <u>Circuit Judge</u>.

Defendants Virtual Officeware, LLC ("VOW") and David Harel appeal from the

judgment entered by the United States District Court for the Western District of

Pennsylvania in favor of Plaintiff William Giacone. We will affirm.

I.

Giacone, a former regional sales manager and minority shareholder, claimed that

VOW and Harel (VOW's President) breached his employment agreement ("Employment

Agreement") and sought to recover unpaid wages under the Pennsylvania Wage Payment

and Collection Law ("WPCL"). Defendants filed counterclaims alleging that it was

Giacone who breached the parties' contract.

The District Court conducted a bifurcated bench trial. In its liability ruling, "the

Court [found] in favor of Plaintiff on Plaintiff's breach of contract Claim against

Defendants; and in favor of Plaintiff on Defendants' Counterclaim for breach of

restrictive covenants." <u>Giacone v. Virtual Officeware, LLC</u>, No. 13CV1558, 2014 WL

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not
constitute binding precedent.

2

7070205, at \*17 (W.D. Pa. Dec. 12, 2014) ("Giacone I") (footnote omitted). It subsequently explained that "judgment will be entered in favor of Plaintiff and against Defendants on Plaintiff's claim for breach of contract under the WPCL for a total of $1,104,839." Giacone v. Virtual Officeware, LLC, No. 13CV1558, 2015 WL 1405429, at \*10 (W.D. Pa. Mar. 26, 2015) ("Giacone II"). Judgment was also entered in favor of Giacone on the counterclaims (with the exception of the claim for breach of covenant where there was no harm and no damages), and the District Court refused to award attorney's fees to Defendants. "Plaintiff, on the other hand, is entitled to reasonable attorney's fees under the WPCL."[1] Id. In both its liability and damages rulings, the District Court consistently found Giacone's testimony to be more credible than the testimony offered by Defendants—especially Harel.

## II.

Defendants vigorously challenge the District Court's findings of fact and conclusions of law.[2] Having considered the governing legal principles, the evidence

---

[1] The District Court subsequently awarded Giacone $257,400 for his attorney's fees.

[2] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291.

After a bench trial, this Court reviews a district court's factual findings for clear error and its legal conclusions de novo. See, e.g., McCutcheon v. Am.'s Servicing Co., 560 F.3d 143, 147 (3d Cir. 2009). A finding of fact is clearly erroneous when, even though there may be evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. See, e.g., Estate of Spear v. Comm'r, 41 F.3d 103, 114-15 (3d Cir. 1994). "We will not reverse as long as the District Court's account of the evidence is 'plausible in light of the record,' even if convinced that we 'would have weighed the evidence differently.'" Karkkainen v. Kovalchuk, 445

presented, and the parties' various arguments, we do not believe the District Court committed a reversible error in this proceeding.

According to the District Court, Giacone proved that Defendants materially breached the Employment Agreement by taking away his guaranteed compensation as well as his status as a senior executive. Defendants insist that no changes to his employment had been made at the time he resigned and that, in any event, the Employment Agreement allows for these changes. However, the District Court—after presiding over this bench trial—appropriately determined that Giacone was more credible than Harel. In turn, it properly considered the documentary evidence, which indicated that Defendants implemented the changes. For instance, Harel's June 14, 2013 e-mail to VOW's Board stated that a proposed $66,000 payment to Giacone was "in consideration for the sources of income that [sic] taken out from his employment terms; his book of business selling to existing install base, sales manager's overrides, annual increases, auto allowances, employee bonus, and manager bonuses." (JA908.) On June 28, 2013, a memorandum was sent to the sales staff (including Giacone) summarizing "the revised commission policy"—which "started on June 3, 2013." (JA954.) In addition, "Defendants' positions at trial fluctuated on the issue of why their actions did not constitute a breach of the Employment Agreement." Giacone I, 2014 WL 7070205, at *2. "[W]hy would Defendants intensively labor to modify the existing contract if the restructuring changes were allowed/proper under the existing Employment Agreement?"

---

F.3d 280, 289 (3d Cir. 2006) (quoting Anderson v. City of Bessemer, 470 U.S. 564, 574

4

Id. We conclude that, even if this Court would have weighed the evidence in the record differently, "the District Court's account of the evidence is 'plausible in light of the record.'" Karkkainen, 445 F.3d at 289 (quoting Anderson, 470 U.S. at 574).

Similarly, the District Court appropriately determined that Defendants failed to provide full compensation for the commissions Giacone earned on "ASP" (or "Application Service Provider") contracts under Schedule A of the Employment Agreement. Schedule A sets forth the following formula for determining his ASP commissions: "(Term) X (Monthly Fees) X (Commission Rate)." (JA888.) Section 3(b) of the Employment Agreement provides that, "[i]n addition to the Base Salary, the Company shall pay Employee a bonus and commission as set forth on Schedule A, as computed under the Company's policy on the date hereof ('Additional Compensation')." (JA878.) It is uncontested that VOW's predecessor ("Virtual Officeware, Inc.," or "VOI") used a twelve-month multiplier (as opposed to a multiplier based on the term of the contract). However, "Schedule A was specifically referenced and incorporated into the Employment Agreement," and Section 3(b) "unambiguously spelled out the requirement that Defendants pay a bonus and commissions as set forth in Schedule A." Giacone I, 2014 WL 7070205, at *4. We further note that the Employment Agreement itself refers to "the Company's policy," and "Company" is expressly defined in the contract as VOW—not VOI. The parties thereby intended to pay Giacone under VOW's policy, i.e., the commission calculated under the formula set forth on the schedule

(1985)).

5

attached to—and expressly referenced in—the Employment Agreement.

Defendants also take issue with the District Court's repudiation finding. According to the District Court, Defendants' conduct over the course of the lengthy and detailed negotiations between the parties, the definitive statements in Harel's July 3, 2013 email, and the compensation structure set forth in the June 28, 2013 memorandum led Giacone to reach the reasonable conclusion that his Employment Agreement would never be respected. In his e-mail, Harel rejected Giacone's request for a $95,000 bonus (explaining that "[t]he remaining term on the contract today is 18 months, and we are replacing them with a new 18 months contract") as well as a new commission sheet (claiming that he "will not have this colossal mess every time we add a product to our pricelist or change the commission model on a product"). (JA973.) Given the evidence presented at the bench trial, we do not believe that the District Court committed reversible error by crediting Giacone's belief that his Employment Agreement would never be respected.

Giacone purportedly invoked Section 4(c) of the Employment Agreement, providing for "<u>Termination for Good Reason by Employee</u>." This subsection specifically defines a "good reason" termination as:

> a termination by Employee of his employment with the Company, by written notice to the Company specifying in reasonable detail the circumstances claimed to provide the basis for such termination, within 20 days following the occurrence, without Employee's consent, of any of the following events and the failure of the Company to correct the circumstances set forth in Employee's notice of termination within 5 days of receipt of such notice: (i) the assignment to Employee of duties that are not consistent with the duties provided for in Section 2(b) or (ii) a reduction

6

in the rate of Employee's Base Salary, or (iii) a material breach by the Company of this Agreement.

(JA879.) Section 4(e) specifies that any termination shall be communicated by "a written Notice of Termination," i.e., "a notice stating that Employee's employment with Company has been or will be terminated and the specific provisions of this Section 4 under which such termination is being effected." (JA880.) In Section 7(i), the Employment Agreement provides for notice to be, inter alia: "(i) in writing, (ii) delivered personally, by courier service or by certified mail, first-class postage prepaid and return receipt requested, [and] (iii) deemed to have been received on the date of delivery or, if so mailed, on the third business day after the mailing thereof[.]" (JA885.) According to Defendants, the letter from Giacone's attorney to Harel—sent by e-mail at 6:20 p.m. on Wednesday, July 3, 2013, and by regular mail—did not fulfill these notice requirements.

The contents of the July 3, 2013 letter adequately "stat[ed] that Employee's employment . . . has been or will be terminated and the specific provisions of this Section 4 under which such termination is being effected" (JA880) and "specif[ied] in reasonable detail the circumstances claimed to provide the basis for such termination" (JA879). As the District Court noted, "[i]t was not 'vague' as Defendants continually represented to the Court during the trial of this matter." Giacone I, 2014 WL 7070205, at *16. On the contrary, "the letter was quite detailed." Id. The letter expressly stated that it "must serve as a notice of termination pursuant to Section 4 of the Employment Agreement to be effective if the existing Employment Agreement terms are not respected/restored by July 8, 2013." (JA1039-JA1040.) It obviously did not implicate "Termination Due to

7

Death or Disability" under Section 4(a) or "Termination by the Company for Cause" under Section 4(b). (JA878-JA879.) While Section 4(d) permits "Voluntary Termination" (JA879), the letter referred to a five-day period to cure (implicated by Section 4(c)—and not by Section 4(d)). Referring to the ASP commissions, the attorney went on to complain about modifications that removed Giacone from an executive level position and changed the existing commission structure. As a result, the District Court found it unbelievable that Defendants lacked actual notice or did not understand their alleged breaches of the Employment Agreement. Given the evidence in the record and the District Court's own credibility assessments, this finding of fact was not clearly erroneous.

Acknowledging that "the manner in which the notice . . . was delivered did not fully comport with the terms of the contract," the District Court determined that Defendants had timely and actual notice of Plaintiff's position regarding his view of the breaches [through] the intense 'modification' negotiations, and had an opportunity to cure." Giacone I, 2014 WL 7070205, at *2. The "delivery method" requirement exists to ensure that "Virtual Officeware receives the notice." (Appellants' Reply Brief at 13.) It did (and, in fact, it appears that the notice, sent by e-mail, was received immediately). While Giacone submitted his resignation on July 8, 2013 (and accepted another position on July 10, 2013), VOW had (at the very least) until July 11, 2013 to cure (i.e., mailed notice is deemed to have been received on the third business day, and VOW has five days from receipt of the notice to correct). However, "Defendants were in contact continually

over the weekend." Giacone I, 2014 WL 7070205, at \*16. As Giacone aptly puts it, "[a]ll hands were on deck" even though it was the July Fourth weekend. (Appellee's Brief at 28.) In turn, Defendants did not object to the July 3, 2013 letter, ask for more information, or express any confusion regarding its contents. See, e.g., Accu-Weather, Inc. v. Prospect Commc'ns, Inc., 644 A.2d 1251, 1254-55 (Pa. Super. Ct. 1994) ("Upon receiving CRB's alleged notice of termination on February 20, 1991, Accu-Weather responded, in writing, unequivocally rejecting the notice and clearly setting forth the conditions under which the agreement could be terminated."). According to Defendants, the cure (if needed) was provided when Harel called Giacone on the evening of July 8, 2013 to accept his terms and e-mailed him the following day to communicate this acceptance. Nevertheless, Harel's e-mail did not expressly refer to Giacone's status as a senior executive, the commission schedule, or the ASP contracts. In fact, Defendants continue to argue that, on the one hand, they never changed the terms of Giacone's employment and, on the other hand, the Employment Agreement allows them to make these changes. Simply put, giving Defendants more time to cure would have been pointless.

We refuse to vacate merely because the letter (which was clearly received by Defendants) was sent by e-mail and regular mail or because Defendants (who still insist that they never breached the Employment Agreement in the first place) should have been given a few more days in which to offer a cure. "When a party has honestly and faithfully performed all material elements of its obligation under a contract, but has failed

9

to fulfill certain technical obligations, causing no serious detriment to the injured party, it would be odious and inequitable to compel forfeiture of the entire contract." Barraclough v. Atl. Refining Co., 326 A.2d 477, 480 (Pa. Super. Ct. 1974). Even if this doctrine of substantial performance does not apply, see, e.g., Keystone Dedicated Logistics, Inc. v. JGB Enters., Inc., 77 A.3d 1, 8 (Pa. Super. Ct. 2013) (stating that conditions precedent to contract termination must be strictly fulfilled), we believe that the requirements for equitable estoppel were satisfied in this case, see, e.g., Liberty Prop. Trust v. Day-Timers, Inc., 815 A.2d 1045, 1050 (Pa. Super. Ct. 2003) ("[Equitable estoppel] 'arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.'" (quoting In re Estate of Tallarico, 228 A.2d 736, 741 (Pa. 1967))).

The Employment Agreement provides that, in the event of a "good reason" termination, VOW shall pay Giacone:

> his full Base Salary, Additional Compensation and all other compensation earned through the Date of Termination, all Base Salary, Additional Compensation and all other compensation expected to be earned through the end of the remaining Employment Period, and Company shall be liable for all damages caused by said termination.

(JA880.) VOW further agreed to pay for his medical, dental, hospital, and disability coverage for a period of twelve months after termination.

The District Court did not commit reversible error in its calculation of damages.

10

Defendants challenge the inclusion of "'imminent' commissions in his income for the first 6.5 months of 2013," even though "both Giacone and Virtual Officeware's account supervisor testified that many of those commissions were not payable when Giacone resigned." (Appellants' Brief at 55 (citations omitted) (footnote omitted).) They nevertheless admit that "the good reason provision requires payment of expected earnings." (Appellants' Reply Brief at 29.) The District Court, in turn, appropriately found that Giacone would have closed these deals if he had remained with the company, and it then reasonably relied on these "imminent commissions" as well as the commissions that he had already been paid (or should have been paid under Schedule A) to ascertain what he would have earned for the remainder of the contractual term. In addition, the District Court properly relied on Giacone's submission under Federal Rule of Evidence 1006 for the insurance calculation, and the Employment Agreement itself provides for "four (4) weeks of paid vacation on an annualized basis and sick days, in accordance with the Company's applicable policies." (JA878.)

According to the District Court, "[t]he monies owed to Plaintiff pursuant to 4(g)(ii) of the Employment Agreement constitute 'wages' under the WPCL." Giacone II, 2015 WL 1405429, at *6 (citing 43 Pa. Stat. and Cons. Stat. § 260.5(a); Shaer v. Orthopaedic Surgeons of Cent. Pa., Ltd., 938 A.2d 457, 464 (Pa. Super. Ct. 2007)). Defendants argue that so-called "good reason payments" are not wages because they are contingent on satisfying the conditions precedent set forth in the Employment Agreement and include compensation expected to be earned. It is undisputed that wages "include

11

'all earnings of an employe [sic]' as well as fringe benefits or wage supplements' (defined as 'guaranteed pay' and 'any other amount to be paid pursuant to an agreement to the employee')." (Appellants' Brief at 57-58 (quoting 43 Pa. Stat. and Cons. Stat. § 260.2a).) Like the District Court, we conclude that the monies owed to Giacone constitute wages under this statutory scheme because the terms of the Employment Agreement guarantee payment upon termination. After all, the WPCL, which was enacted to make employees whole, must be liberally construed. See, e.g., Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 960 (Pa. Super. Ct. 2011), aff'd, 106 A.3d 656 (Pa. 2014) (per curiam), petition for cert. filed, 83 U.S.L.W. 3747 (U.S. Mar. 13, 2015) (No. 14-1124); Oberneder v. Link Computer Corp., 674 A.2d 720, 722 (Pa. Super. Ct. 1996), aff'd, 696 A.2d 148 (Pa. 1997). In the event of a termination for good reason, the parties' contract specifically requires VOW pay "all Base Salary, Additional Compensation and all other compensation expected to be earned through the end of the remaining Employment Period." (JA880.) See, e.g., Shaer, 938 A.2d at 464 ("In exchange for this additional service during this ninety-day period of time in question, Dr. Shaer would be guaranteed salary and benefits during the transitional time period. Thus, there was a contractual arrangement, and OSCP's breach of that contract led, in the language of the WPCL, to a wrongful withholding of an 'amount to be paid pursuant to an agreement to the employee.' 43 P.S. § 260.2a.").

The WPCL provides for the award of liquidated damages where, inter alia, there is "no good faith contest or dispute of any wage claim." 43 Pa. Stat. and Cons. Stat. §

12

260.10.  While Defendants contend that they acted in good faith, an employer must establish its good faith through clear and convincing evidence.  See, e.g., Braun, 24 A.3d at 963-64.  Given this heavy burden, we do not believe that the District Court committed reversible error by finding that they lacked a good faith basis to withhold payment.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.